## **Exhibit A**

**Liquidation Analysis**

**LIQUIDATION ANALYSIS FOR EIGER BIOPHARMACEUTICALS, INC., et al.[1]**

Under the "best interests of creditors" test set forth by section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless each holder of an allowed claim or interest in an impaired class either: (a) accepts the plan; or (b) will receive or retain property on account of such claim or interest of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

Accordingly, to demonstrate that the Plan as described in the Disclosure Statement satisfies the "best interests of creditors" test, the Debtors, with the assistance of their advisors, have prepared the following hypothetical liquidation analysis presenting recoveries available to holders of claims and interests assuming a hypothetical chapter 7 liquidation of the Debtors (the "Liquidation Analysis"). In addition, the Debtors, with the assistance of their advisors, have prepared a hypothetical chapter 11 wind-down analysis (the "Chapter 11 Wind-Down Analysis") to outline the various value drivers that an orderly chapter 11 wind-down provides as compared to a chapter 7 liquidation. The Liquidation Analysis and the Chapter 11 Wind-Down Analysis are based upon certain assumptions detailed in the Disclosure Statement and in the Global Notes and Assumptions set forth below.

This Liquidation Analysis sets forth an estimated range of recovery values for each Class of Claims and Interests that may be realizable upon the disposition of assets pursuant to a hypothetical chapter 7 liquidation of the Debtors' Estates. Because the net liquidation proceeds would provide for lower recoveries relative to the recoveries under the Plan, as illustrated by this Liquidation Analysis, the Debtors believe that Holders of Allowed Claims or Allowed Interests would receive greater value under the Plan than the amounts such Holders would receive if the Debtors were forced to liquidate under chapter 7, and that, as a result, the Plan satisfies the "best interests" test of section 1129(a)(7) of the Bankruptcy Code.

**Statement of Limitations**

THE ILLUSTRATIVE LIQUIDATION ANALYSIS AND CHAPTER 11 WIND-DOWN ANALYSIS PRESENTED HEREIN HAVE BEEN PREPARED SOLELY FOR THE PURPOSES DESCRIBED ABOVE AND MAY NOT BE USED FOR ANY OTHER PURPOSE. THE UNDERLYING FINANCIAL INFORMATION IN THE LIQUIDATION ANALYSIS AND THE CHAPTER 11 WIND-DOWN ANALYSIS WAS NOT COMPILED OR EXAMINED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS.

The determination of the costs of and proceeds from the hypothetical liquidation of the Debtors' assets in a chapter 7 case or, alternatively, a chapter 11 wind-down involves the extensive

---

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Amended Disclosure Statement for Joint Plan of Liquidation of Eiger BioPharmaceuticals, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 476-1] (the "Disclosure Statement").

use of estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis and the Chapter 11 Wind-Down Analysis may not materialize in an actual chapter 7 liquidation or chapter 11 wind-down, and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation or chapter 11 wind-down.

The Liquidation Analysis and Chapter 11 Wind-Down Analysis include estimates for Claims as part of the Debtors' chapter 11 cases that could be asserted and allowed in a chapter 7 liquidation, including unpaid chapter 11 Administrative Claims, and chapter 7 administrative claims such as wind-down cost and fees owed to the chapter 7 trustee (the "Trustee"). To date, the Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing the Liquidation Analysis or Chapter 11 Wind-Down Analysis. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis and Chapter 11 Wind-Down Analysis should not be relied on for any other purpose, including the value of any distribution to be made on account of Allowed Claims and Interests under the Plan. **THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE DEBTORS' CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.**

NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS OR CHAPTER 11 WIND-DOWN ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

THE LIQUIDATION ANALYSIS AND THE CHAPTER 11 WIND-DOWN ANALYSIS ARE HYPOTHETICAL EXERCISES THAT HAVE BEEN PREPARED FOR THE SOLE PURPOSE OF PRESENTING A REASONABLE GOOD FAITH ESTIMATE OF THE NET PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE OR IN A CHAPTER 11 WIND-DOWN AS OF THE CONVERSION DATE (DEFINED BELOW). THE LIQUIDATION ANALYSIS AND THE CHAPTER 11 WIND-DOWN ANALYSIS ARE NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS AND THE CHAPTER 11 WIND-DOWN ANALYSIS DO NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE CHAPTER 11 WIND-DOWN ANALYSIS AND THE VALUES THAT MAY BE REALIZED OR CLAIMS GENERATED IN AN ACTUAL LIQUIDATION OR WIND-DOWN.

NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS OR CHAPTER 11 WIND-DOWN ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM BY THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH HEREIN. THE

DEBTORS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE ANALYSES SET FORTH HEREIN.

**Key Assumptions Underlying the Hypothetical Liquidation**

The following general assumptions were considered by the Debtors and their advisors as assumptions that would be applicable in any hypothetical chapter 7 liquidation.

Based on the foregoing, and the Global Notes and Assumptions below, the Debtors believe the following Liquidation Analysis reflects the likely results of a chapter 7 liquidation as compared to an orderly wind-down of the debtors' estates pursuant to a liquidating chapter 11 plan.

<u>Administrative Procedures and Conversion of Cases</u>

The Liquidation Analysis assumes that each of the Debtors' chapter 11 cases is converted to a case under chapter 7 and consolidated during the chapter 7 cases for procedural purposes only. In the event that the Debtors were to be liquidated in separately administered chapter 7 cases, the administrative costs to the Debtors in each of the cases, including professional fees, Trustee fees, and operational costs likely would be higher than if the cases were consolidated.

<u>Professionals Involved in the Chapter 7 Cases</u>

As part of the chapter 7 cases, the Debtors assume that the Trustee would choose to retain certain professionals, including counsel, advisors, and investment bankers, among others, to provide expertise and assistance in the liquidation of any remaining assets of the Debtors. The Liquidation Analysis assumes that the existing counsel and advisors would be replaced by the Trustee with new professionals.

<u>Timing Considerations of Chapter 7 Cases</u>

The Liquidation Analysis assumes an orderly wind-down and liquidation of any remaining operations or assets over a six to twelve-month period commencing on or around September 5, 2024 (the "<u>Conversion Date</u>"). There can be no assurance, however, that a liquidation would be completed in the limited timeframe, nor is there any assurance that the recoveries assigned to the Debtors' assets would in fact be realized.

<u>Trustee Fees for Chapter 7 Administration</u>

Under section 326(a) of the Bankruptcy Code, for a case under chapter 7, the Court may allow reasonable compensation for the Trustee's services not to exceed three percent (3%) of the moneys disbursed or turned over in the case by the Trustee to parties in interest, excluding the Debtors, but including Holders of secured Claims. The Debtors assume in the Liquidation Analysis that such fees would be approximately two percent (2%) to three percent (3%) of gross liquidation proceeds distributed.

3

Additional Claims

The cessation of the Debtors' businesses in a chapter 7 liquidation is likely to trigger certain Claims that otherwise would not exist under the Plan. Examples of these kinds of Claims include tax liabilities triggered upon the transfer of assets, Claims related to the rejection of executory contracts and unexpired leases, and litigation Claims. While some of these Claims could be significant and may be entitled to priority in payment over General Unsecured Claims, no adjustment has been made for these potential Claims unless specified in the assumptions and notes to the Liquidation Analysis and Chapter 11 Wind-Down Analysis.

Basis of Presentation

The Liquidation Analysis and the Chapter 11 Wind-Down Analysis are based on the internal, unaudited financial statements of the Debtors as of June 30, 2024 (unless otherwise indicated). The actual assets available to the Debtors' estates and claims arising in the event of an actual liquidation or wind-down may differ from the assets assumed to be available pursuant to the Liquidation Analysis.

Distribution of Liquidation Proceeds.

Chapter 7 and chapter 11 Administrative Claims, Professional Compensation Claims, Priority Tax Claims, and Statutory Fees, and other Claims that may arise in a liquidation or wind-down scenario would be paid from the liquidation / wind-down proceeds before the balance of any proceeds will be made available to make distributions on account of Allowed Claims or Allowed Interests. Under the absolute priority rule, no junior creditor at a given entity would receive any distribution until all senior creditors are paid in full at such entity, and no equity holder at such entity would receive any distribution until all creditors at such entity are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis and the Chapter 11 Wind-Down Analysis are estimated in accordance with the absolute priority rule. Administrative claims, including section 503(b)(9) Claims, accrued outstanding post-petition expenses, U.S. Trustee fees, accrued payroll and benefits, paid time off and unpaid and accrued Chapter 11 professional fees incurred in the chapter 11 cases through September 5, 2024, are assumed to be paid in full in the Chapter 11 Wind-Down Analysis with cash on hand.

Liquidation Analysis

The Court approved or has been requested to approve the Debtors' sale of substantially all of their assets prior to the assumed Conversion Date. Upon the Conversion Date, a liquidation would be conducted pursuant to chapter 7 of the Bankruptcy Code, with a Trustee appointed to manage the bankruptcy estates, which would include any assets not otherwise sold prior to the Conversion Date, and to distribute funds received from any sale. The Trustee would be responsible for liquidating the Debtors' remaining assets in a manner intended to maximize the recovery to creditors. Asset sale proceeds resulting from the liquidation process would be reduced by the expenses of the liquidation process prior to the distribution of such proceeds to any Holders of Allowed Claims or Allowed Interests. The three major components of the liquidation process would be as follows:

4

- the generation of cash proceeds from the sale of remaining assets;
- the administration and management of costs and post-conversion operational cash flow related to the liquidation process, such as personnel retention costs, claims reconciliation costs, estate wind-down costs, and Trustee and professional fees; and
- the distribution of net proceeds generated from asset sales to claimants in accordance with the priority scheme under chapter 7 of the Bankruptcy Code.

**Process Assumptions**

The Liquidation Analysis has been prepared assuming that the Debtors converted their cases from chapter 11 to chapter 7 on or about the Conversion Date. On the Conversion Date, it is assumed that a Trustee would be appointed to oversee the liquidation of the Debtors' estates. The Chapter 11 Wind-Down Analysis presumes that a plan administrator ("Plan Administrator") would be appointed as of September 5, 2024 to oversee the wind-down of the Debtors' estates within the Chapter 11 Wind-Down Analysis. In both the Liquidation Analysis and the Chapter 11 Wind-Down Analysis, to the extent asset sales have been consummated, the amount of cash proceeds received have been used.

**Consummation of the Plan Will Provide Greater Value Than Under a Hypothetical Liquidation Through Chapter 7 of the Bankruptcy Code**

Because the distributions to Holders of Claims under the Liquidation Analysis provide for lower recoveries relative to the recoveries under the Plan, the Debtors believe that consummation of the Plan will provide greater value to such Holders than would a liquidation under chapter 7 of the Bankruptcy Code.

5

## Chapter 11 Wind-Down Analysis Compared to Chapter 7 Liquidation Analysis

The below exhibit provides a side-by-side comparison of the respective recoveries for various Classes of Claims and Interests under the Chapter 11 Wind-Down Analysis and the Liquidation Analysis.

| Liquidation Proceeds ($ in '000s) | Notes | Book Value | | Chapter 11 Wind-Down Analysis Estimated Recovery | | | | Chapter 7 Liquidation Analysis Estimated Recovery | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Low ($) | High ($) | Low (%) | Low ($) | High (%) | High ($) | Low (%) | Low ($) | High (%) | High ($) |
| Lonafarnib (HDV) Expected Net Proceeds | 1 | $ 5,044 | $ 5,044 | 100% | $ 5,044 | 100% | $ 5,044 | 100% | $ 5,044 | 100% | $ 5,044 |
| Lambda Expected Net Proceeds | 2 | 970 | 970 | 100% | 970 | 100% | 970 | 100% | 970 | 100% | 970 |
| Expected Estate Cash | 3 | 37,942 | 37,942 | 100% | 37,942 | 100% | 37,942 | 100% | 37,942 | 100% | 37,942 |
| **Total Distributable Value Before Administration Costs** | | **$ 43,956** | **$ 43,956** | **100%** | **$ 43,956** | **100%** | **$ 43,956** | **100%** | **$ 43,956** | **100%** | **$ 43,956** |
| **Less: Administration Costs** | | | | | | | | | | | |
| Plan Administrator & Liquidating Trustee / Ch 7 Trustee Fees | 4 | | | | $ 900 | | $ 450 | | $ 1,319 | | $ 879 |
| Post-Effective Date Budget / Chapter 7 Trustee Budget | 5 | | | | 6,997 | | 5,025 | | 6,997 | | 5,025 |
| **Total Administration Costs** | | | | | 7,897 | | 5,475 | | 8,316 | | 5,904 |
| **Net Liquidation Proceeds Available for Distribution** | | | | | **$ 36,059** | | **$ 38,481** | | **$ 35,640** | | **$ 38,051** |
| | | Claim Amount | | Estimated Recovery | | | | Estimated Recovery | | | |
| Claims | | Low ($) | High ($) | Low (%) | Low ($) | High (%) | High ($) | Low (%) | Low ($) | High (%) | High ($) |
| Class 1 - Other Secured Claims | 6 | $ 0 | $ 0 | 100% | $ 0 | 100% | $ 0 | 100% | $ 0 | 100% | $ 0 |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | 36,058 | | 38,480 | | 35,640 | | 38,051 |
| Class 2 - Other Priority Claims | 7 | $ 65 | $ 447 | 100% | $ 447 | 100% | $ 65 | 100% | $ 447 | 100% | $ 65 |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | 35,612 | | 38,416 | | 35,193 | | 37,987 |
| Class 3 - Prepetition Term Loan Claims | 8 | $ 17,132 | $ 23,419 | 100% | $ 23,419 | 100% | $ 17,132 | 100% | $ 23,419 | 100% | $ 17,132 |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | 12,193 | | 21,283 | | 11,774 | | 20,854 |
| Class 4 - General Unsecured Claims | 9 | $ 7,169 | $ 7,169 | 100% | $ 7,169 | 100% | $ 7,169 | 100% | $ 7,169 | 100% | $ 7,169 |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | 5,023 | | 14,114 | | 4,605 | | 13,685 |
| Class 5 - Intercompany Claims | 10 | $ - | $ - | N/A | $ - | N/A | $ - | N/A | $ - | N/A | $ - |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | 5,023 | | 14,114 | | 4,605 | | 13,685 |
| Class 6 - Existing Equity Interests | 11 | N/A | N/A | N/A | $ 5,023 | N/A | $ 14,114 | N/A | $ 4,605 | N/A | $ 13,685 |
| *Remaining Liquidation Proceeds Available for Distribution* | | | | | - | | - | | - | | - |

## Footnotes to Wind-Down Analysis

### 1. Lonafarnib (HDV) Expected Net Proceeds

Expected net proceeds for Lonafarnib (HDV) are $5,200,000. Banker fees will be 3% of gross proceeds, resulting in net proceeds of $5,044,000.

### 2. Lambda Expected Net Proceeds

Expected net proceeds for Lambda are $1,000,000. Banker fees will be 3% of gross proceeds, resulting in net proceeds of $970,000.

### 3. Expected Estate Cash

The Debtors' Cash and Cash equivalents bank balance is estimated to be $37,941,746 as of the week ending September 6, 2024. The Cash balance includes sale proceeds of previously sold assets Zokinvy and Avexitide. The Cash proceeds from Zokinvy were deposited in an escrow account with a current balance of $21,644,018.19, which funds are earning interest income at a rate of 2% per annum, the proceeds of which will be used to satisfy Allowed Claims and Allowed Interests. The Chapter 11 Wind-Down Analysis and the Liquidation Analysis assume liquidation proceeds of Cash and Cash equivalents are 100% of the unaudited book value.

**4. Plan Administrator and Liquidation Trustee / Chapter 7 Trustee Costs**

Expenses for a Chapter 11 Plan Administrator and Liquidation Trustee are expected to be $75,000 per month. The range assumes a Plan Administrator and Liquidation Trustee will be engaged between six and twelve months.

Expenses for a Chapter 7 trustee are expected to range between 2% and 3% of all assets distributed.

**5. Post-Effective Date Budget / Chapter 7 Trustee Budget**

The budget includes (a) a budget to litigate claims against the Estates; (b) a disbursement bridge from plan confirmation to emergence, (c) asset transition tail costs, (d) costs to support assets post-divestiture, including the management of EigerBio Europe Limited, which is necessary for regulatory purposes; (e) Statutory Fees; and (e) reserves for customer programs in France, Germany, and Medicaid. For purposes of this analysis, we assume the budget is the same under Chapter 11 and Chapter 7.

**6. Class 1 – Other Secured Claims**

Includes Class 1 claims received of $211.00.

**7. Class 2 – Other Priority Claims**

Other priority claims include (a) accrued employee priority severance payments of $60,600 and (b) buyback of leftover Zokinvy inventory of $0 - $382,230.

**8. Class 3 – Prepetition Term Loan Claims**

The high-end of the range for the Claim shows the full amount alleged by Innovatus, including (a) a pre-payment penalty, (b) an exit fee, (c) cash, PIK and default interest accrued, and (d) a $1,000,000 reserve to cover potential professional fee indemnification. The low end of the range for the Claim excludes (a) a pre-payment penalty, (b) an exit fee, and (c) default interest accrued.

**9. Class 4 – General Unsecured Claims**

The claims include (a) pre-petition accounts payable; (b) interest accrued on pre-petition accounts payable; (c) other unsecured claims; (d) former employee severance claims; (e) post-bankruptcy employee severance; (f) retention bonuses for post-bankruptcy employees; and (g) payroll taxes payable on severance and retention bonuses.

**10. Class 5 – Intercompany Claims**

This analysis assumes that under the Plan, on the Effective Date, each Holder of an Allowed Intercompany Claim shall have its Claim cancelled, released, and extinguished and without any distribution at the election of the Debtors. Per prior agreement, each Holder of an Allowed

7

Intercompany Claim will waive entitlement to a distribution on account of such Claim. For purposes of this analysis, it is assumed that Intercompany Claims will be treated the same in a Chapter 7 liquidation.

**11. Class 6 – Existing Equity Interests**

Assumes pro-rated returns to all Holders of Existing Equity Interests as of the Distribution Record Date.