Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-8967

Elizabeth Ziegler Young
for the United States Trustee
elizabeth.a.young@usdoj.gov

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No.　24-80040-sgj11 |
| | § | Chapter 11 |
| Eiger BioPharmaceuticals, Inc., *et al.*[1], | § | (Jointly Administered) |
| | § | |
| *Debtors*. | § | |

**UNITED STATES TRUSTEE'S OBJECTION TO
CONFIRMATION OF AMENDED JOINT PLAN OF LIQUIDATION OF EIGER
BIOPHARMACEUTICALS, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO
CHAPTER 11 OF THE BANKRUPTCY CODE**

TO THE HONORABLE STACEY G. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for Region 6 (the "United States Trustee"), files this objection (the "Objection") to confirmation of the *Third Amended Joint Plan of Liquidation of Eiger Biopharmaceuticals, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [ECF No. 571] (the "Third Amended Plan").

**SUMMARY**

This plan should be a straightforward liquidating plan. The debtor has sold most of its assets and alleges that it has enough money to pay general unsecured creditors in full. Thus, the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Eiger BioPharmaceuticals, Inc. (1591); EBPI Merger Inc. (9986); EB Pharma LLC (8352); Eiger BioPharmaceuticals Europe Limited (N/A); and EigerBio Europe Limited (N/A). The Debtors' service address is 2100 Ross Avenue, Dallas, Texas 75201.

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION**　　　　　　　　　　　　　　　　　　**Page 1**

plan should simply provide for a mechanism to pay the creditors and to set up a trust for the equity holders to maximize their return from the remaining assets. Unfortunately, the plan cannot be confirmed because it includes impermissible releases, exculpations and discharges for the Debtors, their insiders, and their professionals that exceed what the Bankruptcy Code allows. The United States Trustee objects to confirmation of the Third Amended Plan for the following reasons:

- The Third Amended Plan is a liquidating plan. Because it is a liquidating plan, the debtor is not entitled to a discharge. While the Third Amended Plan states that the debtor will not receive a discharge, the Third Amended Plan further provides that creditors and equity holders are releasing the Debtors and then enjoins those same creditors from taking any action against the Debtors. That is a discharge. The Court should not approve any plan that provides a discharge, under whatever name.

- To the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the Third Amended Plan's exculpation provision is too broad in contravention of Fifth Circuit authority.

- The Third Amended Plan imposes nonconsensual plan releases on non-debtor third parties that are not authorized under the United States Bankruptcy Code by relying on "opt-out" elections in the ballots (for voting classes) and in the notice of "non-voting status" (for non-voting classes), which are ineffective to constitute consent to the Third-Party Release.

- The Third Amended Plan imposes a sweeping injunction to enforce both the exculpation provision and the nonconsensual plan releases that is not authorized under the United States Bankruptcy Code.

- Finally, the Third Amended Plan should clarify that claims of governmental entities are not released.

# FACTUAL ALLEGATIONS

**The Disclosure Statement, Plan, and Solicitation**

1. On July 15, 2024, the Debtors filed their initial joint plan of reorganization [ECF No. 424] and initial disclosure statement [ECF No. 425]. On July 28, 2024, the Debtor filed its Amended Plan (via a Notice, including a version redlined to the original) [ECF No. 455] and its amended disclosure statement (via a Notice, including a version redlined to the original) [ECF No. 456].

2. On July 30, 2024, the Court entered the Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Conditionally Approving the Disclosure Statement, (III) Establishing Objection Deadlines and Related Procedures; (IV) Approving the Notice Materials; and (V) Granting Related Relief (the "Solicitation Order"). [ECF No. 473]

3. The Solicitation Order also approved the form of notice of the confirmation hearing, the forms of ballots for voting classes (the "Ballots"), the form of non-voting status notice (the "Non-Voting Notice"), all of which contain the Plan language describing the discharge, injunctions, exculpations, and releases contained in the Amended Plan (including the attempt to have creditors release third-party non-debtors). The Ballots and the Non-Voting Notice also contain opt-out provisions requiring those creditors to affirmatively "opt out" of the Plan's provisions granting the Third-Party Release or be deemed to "consent" to granting the Third-Consent Release.

4. Parties receiving the Non-Voting Notice did not receive the full solicitation package; instead, the Non-Voting Notice explained how Non-Voting Notice recipients could request and obtain copies of the solicitation package, including the Amended Plan.

5. On August 28, 2024, the Debtors filed their Third Amended Plan (ECF No. 571].[2]

**Certain Terms of the Third Amended Plan**

*Plan Implementation*

6. The Third Amended Plan is a liquidation plan, under which the Debtors will establish a liquidating trust (the "Liquidating Trust") to hold and to administer the Liquidating Trust Assets, distribute cash pursuant to the Third amended plan, and pursue Retained Causes of Action. *See* Third Amended Plan, Article IV.

*Classification of Claims and Interests*

7. Article III.A. of the Third Amended Plan provides thar Classes 1-5 (the creditor classes) are unimpaired, not entitled to vote, and deemed unimpaired and class 6 existing equity interests are impaired and entitled to vote.

*Governing Law*

8. Article XII.M. of the Third Amended Plan provides that the governing law for the Third Amended Plan, unless Federal law applies or unless otherwise specifically stated, are the laws of the State of Texas.

**OBJECTION**

**The Plan Discharges the Debtor in Violation of the Bankruptcy Code.**

9. The Third Amended Plan is inconsistent with the Bankruptcy Code because it provides a discharge to the Debtors. The Bankruptcy Code provides that "[t]he confirmation of a plan does not discharge a debtor if: (A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of

---

[2] Unless otherwise indicated herein, capitalized terms shall have the meaning ascribed to them in the Third Amended Plan.

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION** Page 4

the plan; and (C) the debtor would be denied a discharge under § 727(a) of this title if the case were a case under chapter 7 of this title." 11 U.S.C. § 1141(d)(3).

10. The Third Amended Plan fulfills all three criteria stated above (and indeed, is labeled a "liquidation" plan). And the Third Amended Plan states in Article IX(E) entitled "No Discharge," "Because the Debtors are liquidating and will not engage in business after consummation of the Plan, they are not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims or Interests."

11. That should be the end of the story, but numerous provisions of the Plan contradict that language and impermissibly discharge and permanently enjoin the claims of creditors and equity holders in violation of 11 U.S.C. § 1141(d)(3).

12. First, Article III(B)(4) of the Plan, which details the treatment of the Class 4 general unsecured creditors, provides that claimants will receive their payments under the Plan "in full and final satisfaction, settlement, release, and discharge of such Claim."

13. Likewise, Article III(B)(6) of the Plan, which details the treatment of Class 6 existing equity interests, provides that equity interest holders will receive their pro rata share of the Existing Equity Interest Recovery Pool "in full and final satisfaction, settlement, release, and discharge of such Interest."

14. Then, the Injunction provision in Article IX(D) states:

**D. Injunction**

**Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) were purchased and released by a Purchaser in connection with the Sale Transactions; (4) are subject to exculpation pursuant to the Plan; or (5) are otherwise discharged, satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any**

**Claims, Interests, Causes of Action, or liabilities that have been compromised or settled against any of the Debtors or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any discharged, released, settled, compromised, or exculpated Claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Plan Administrator, the Liquidating Trustee, the Released Parties, or Exculpated Parties (as applicable): (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released or settled pursuant to the Plan.**

**Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the Debtors, the Plan Administrator, the Liquidating Trustee, and their respective affiliates, employees, advisors, officers and directors, or agents.**

15. The injunction by its terms applies to the Class 4 creditors and the Class 6 equity holders. By permanently prohibiting any creditor or equity interest holder from seeking to recover in the future any part of their claim that was not paid through the Liquidating Plan, this provision improperly operates as what is commonly known as a "discharge injunction" in violation of 11 U.S.C. § 1141(d)(3). See 11 U.S.C. 524(a)(2) (the discharge injunction operates as an injunction against "the commencement or continuation of an action . . . to collect, recover or offset any such debt . . .").

16. The Debtors can remedy this defect by deleting the words "in full and final satisfaction, settlement, release, and discharge of such Claim [Interest]" from Articles Article III(B)(4) and (6) and deleting from the Plan the long paragraph under the Injunction heading at Article IX(D) and any other language in the Plan or its documents that supports what amounts to a discharge injunction.³  Otherwise, the Court should deny confirmation of the Third Amended Plan.

**The Exculpation provision is too broad in contravention of Fifth Circuit authority.**

17. The Court also should deny confirmation because, to the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the plan's exculpation provisions are too broad in contravention of Fifth Circuit precedent.

18. The Fifth Circuit has affirmed that, in accordance with *Bank of New York Trust Company, NA v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)* 584 F.3d 229 (5th Cir. 2009), and section 524(e) of the Bankruptcy Code, "any exculpation in a Chapter 11 reorganization plan [must] be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties . . . ." *In re Highland Cap. Mgmt., L.P.,* 48 F.4th at 437 (5th Cir. 2022).

19. Specifically, the Fifth Circuit in *Highland Capital* analyzed whether the independent directors, who were specifically appointed to act together similar to a bankruptcy trustee, could be exculpated and concluded:

> That leaves one remaining question: whether the bankruptcy court can exculpate the Independent Directors under *Pacific Lumber*. We answer in the affirmative. As the bankruptcy court's governance order clarified, nontraditional as it may be, the Independent Directors were appointed to act together as the bankruptcy trustee for Highland Capital. Like a debtor-in-possession, the Independent Directors are entitled to all the rights and powers of a trustee. *See* 11 U.S.C. § 1107(a); 7

---

³ At most, the plan could provide a temporary injunction against interfering with the Liquidating Trustee's performance under the Plan while the Liquidating Trustee is performing under the Plan.

> COLLIER ON BANKRUPTCY ¶ 1101.01. It follows that the Independent Directors are entitled to the limited qualified immunity for any actions short of gross negligence. *See In re Hilal,* 534 F.3d at 501. Under this unique governance structure, the bankruptcy court legally exculpated the Independent Directors.

*In re Highland Cap. Mgmt., L.P.,* 48 F.4th at 437.

20. The Fifth Circuit in *Highland Capital* then rejected any exculpation for the debtors, employees, officers, directors and professionals holding:

> As it stands, the Plan's exculpation provision extends to Highland Capital and its employees and *CEO*; Strand; the Reorganized Debtor and HCMLP GP LLC; the Independent Directors; the Committee and its members; the Claimant Trust, its trustee, and the members of its Oversight Board; the Litigation Sub-Trust and its trustee; professionals retained by the Highland Capital and the Committee in this case; and all "Related Persons." *Consistent with § 524(e), we strike all exculpated parties from the Plan except Highland Capital, the Committee and its members, and the Independent Directors*.

*In re Highland Cap. Mgmt., L.P.,* 48 F.4th at 438 (emphasis added).

21. While the Third Amended Plan contains a gatekeeping provision as contemplated by *Highland*, the list of Exculpated Parties goes beyond what is permissible under the law of this Circuit, as enunciated in *Highland*. Specifically, the Third Amended Plan includes the following exculpated parties that are not allowed to be exculpated under Fifth Circuit law: the Wind-Down Debtors, Debtors' Professionals, including Sidley Austin LLP, SSG Advisors, LLC, Alvarez & Marsal North America, LLC, Neligan LLP, and Verita Global f/k/a Kurtzman Carson Consultants, LLC, the Professionals of any Statutory Committee, and any directors and officers of the Debtors as of the Petition Date *See* Third Amended Plan Article I.A. (defining "Exculpated Parties").[4]

---

[4] Furthermore, the Third Amended Plan's purported release and exculpation of estate professionals is unnecessary because such professionals are protected by fee review under section 330 of the Bankruptcy Code, under which the Court evaluates the reasonableness of a professional's services, including whether such services were necessary to the administration of the estate or beneficial at the time the services were rendered. The Fifth Circuit has held that a final award of professional fees is *res judicata* as to professional malpractice claims. *Osherow v. Ernst & Young (In re Intelogic Trace, Inc.),* 200 F.3d 382, 387-88 (5th Cir. 2000). Moreover, the current provision could be read to restrict the ability of parties to object to professional fees under 11 U.S.C. § 330.

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION**          Page 8

22. Accordingly, the court should deny confirmation because the Exculpation does not comport with the Fifth Circuit's direction in *Highland*.

**The Third Party Release**

***The "Third-Party Releases" are an impermissible effort by the Debtors to avoid the restrictions of section 114(d)(3) and the Fifth Circuit's opinion in Highland Capital.***

23. As an initial matter, the third-party release here includes the Debtors, the Wind-Down Debtor, and each related party of those entities, which are essentially the debtor's officers, directors, and professionals. At least part of the function of these provisions appears to be another effort by the Debtors to get a discharge that the Bankruptcy Code prohibits in 11 U.S.C. § 1141(d)(3) and an exculpation for the directors, officer, and professionals prohibited by the Fifth Circuit's precedent in *Highland Capital*. This release is nonconsensual and, as applied to third parties, cannot be approved under *Purdue* and the Bankruptcy Code, but to the extent the Debtors are trying to hide a discharge for the Debtor in this provision, this attempt to contravene the prohibition on liquidating debtors being discharged should not be countenanced.

***Nonconsensual plan releases of non-debtor third parties by non-debtor third parties are not authorized under the United States Bankruptcy Code.***

24. In addition, nonconsensual third-party releases are not authorized under the United States Bankruptcy Code. *Harrington v. Purdue Pharma*, *L.P.*, 144 S. Ct. 2071, 2082-88 (2024).

25. This has long been the conclusion held by the Fifth Circuit Court of Appeals. *See Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 252 (5th Cir. 2009) (observing that prior Fifth Circuit authority "seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions") ("*Pacific Lumber*").

26. Contract principles govern whether a release is consensual. *In re SunEdison, Inc.*, 576 B.R. 453, 458 (S.D.N.Y. Bankr. 2017) ("*SunEdison*"). This is because a third-party release is

essentially a settlement between a non-debtor claimant and another non-debtor. The "general rule of contracts is that silence cannot manifest consent." *Patterson et al. v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 686 (E.D. Va. 2022) ("*Mahwah*").

27. The laws of the State of Texas have long held that silence does not equal consent sufficient to support the existence of a contract, except under limited circumstances not applicable in this case.[5] *See Texas Ass'n of Ctys. Cty. Gov't Risk Mgmt. Pool v. Matagorda Cty.*, 52 S.W.3d 128, 132-33 (Tex. 2000). Further, the Commission of Appeals of Texas stated that:

> A contract implied in fact is one in which, under the circumstances, the acts of the parties are such as to indicate according to the ordinary course of dealing and the common understanding of men a mutual intention to contract, as where one accepts the tendered service of another under circumstances justifying the inference that such other expected to be paid for such services. Of course, in implied contracts as well as express contracts there must be shown the element of mutual agreement. But the only difference is that such agreement is expressly stated, in the one instance, and is inferred from the circumstances, in the other. A contract implied from the facts and circumstances in evidence is as binding as would be an expressed one.

*Marr-Piper Co. v. Bullis*, 1 S.W.2d 572, 575 (Tex. Comm. App. 1928, judgment adopted).

28. Silence and inaction, however, will generally not be deemed assent to an offer because, with silence, there is generally no meeting of the minds. *Matagorda Cty.*, 52 S.W.3d at 132-33 (quoting 2 Williston on Contracts § 6:49 (4th ed. 1991)). "[A]s a matter of law, when a party is unilaterally informed of [a contract term], 'mere failure to object within a reasonable time . . ., without more, could not establish an agreement between the parties.'" *In re Couture Hotel Corporation*, 554 B.R. 369, 381 (Bankr. N.D. Tex. 2016) (quoting *Triton Oil and Gas Corp. v. Marine Contractors and Supply, Inc.*, 665 S.W. 2d 443, 445 (Tex. 1982)). "'[A] meeting of the

---

[5] The Third Amended Plan provides that the construction and enforcement of the Third Amended Plan is governed by the laws of the State of Texas. *See* Amended Plan, Article XII.M. That choice of law provision is not controlling for claims or settlements between non-debtors.

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION** Page 10

minds is an essential element of an implied in fact contract.'" *Id*. (quoting *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 49 (Tex. 2008)). Just like it is legal error to define consent in a manner inconsistent with state law, it is error to presume it exists. As discussed above, consent arises when two sets of parties affirmatively assent to something. *See id*. A party seeking to include nondebtor releases in a bankruptcy plan must show that they are consensual. To do so, state law requires that mutually agreeing third parties must come forward, state their consent affirmatively, and ask the court to memorialize their consent in a plan. Nothing in the Code authorizes bankruptcy courts to extinguish claims by inferring consent outside the bounds of state law.

### *Opt-out provisions are insufficient to confer consent to a third-party release.*

29. Here, beyond the named parties, the Plan would impose the Third-Party Release on the following parties, without their affirmative consent: (i) all Holders of Claims or Interests who vote to accept the Plan and do not also opt out; (ii) Holders of Claims or Interests who vote to reject the Plan and do not also opt out of granting the Third-Party Release; (iii) Holders of Claims or Interests who do not vote and do not also opt out of granting the Third-Party Release; and (iv) the current and former Affiliates and Related Parties of entities in these groups.

30. As an initial matter, merely voting in favor of a Plan does not constitute the affirmative consent necessary to reflect acceptance of an offer to enter a contract to release claims against non-debtors. *See* RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (1981). Voting on a chapter 11 plan is governed by the Bankruptcy Code and a favorable vote reflects only approval of the plan's treatment of the voters' claims *against the debtor*. Those voting on the chapter 11 plan who do not also check the opt out box have not reached a "meeting of the minds" as to the release as required under Texas law. The only benefits received are through distributions from the

debtor's chapter 11 plan—there are no benefits provided from the released non-debtor to the releasing claimant. Further, because the plan's distributions are not contingent on agreeing to the non-debtor release, one cannot infer consent from the acceptance of those distributions. Voting for a plan does not reflect the unambiguous assent that should be required to find consent to a release between non-debtors. *See, e.g., In re Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D.N.J. 2007) ("[A] consensual release cannot be based solely on a vote in favor of a plan."); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 507 (Bankr. D.N.J. 1997) (holding that, because consensual releases are premised on the party's agreement to the release, "it is not enough for a creditor to abstain from voting for a plan, or even to simply vote 'yes' as to a plan").

31. Nor can consent be imputed from the failure to make an opt-out election on a Plan ballot that is voted in favor of the Plan. Courts have held that affirmative agreement—something more than the failure to opt out—is required to support a consensual third-party release. *See In re* Decision and Order on Disclosure Statement, *Tonawanda Coke Corp.,* Case No. 18-12156, Dkt. 790 at 5 (Bankr. W.D.N.Y. Aug. 27, 2024); *Mahwah*, 636 B.R. at 686. The *Mahwah* court, in applying black letter contract principles to opt-out releases in a chapter 11 plan, found that contract law does not support consent by inaction, or failure to opt-out. *Mahwah, 636 B.R. at 686.* "Whether the Court labels these 'nonconsensual' or based on 'implied consent' matters not, because in either case there is a lack of sufficient affirmation of consent." *Id.* at 688.

32. Conspicuous warnings in the disclosure statement, on the plan ballots, or on an opt-out form that attempt to dictate that silence or inaction would constitute consent to a release are not sufficient to convert a creditor's silence into his affirmative consent to such release. *SunEdison*, 576 B.R. at 458-61. In *SunEdison*, the debtors argued that the warning in the disclosure statement and on the ballots regarding the potential effect of silence were sufficient to give rise to

a duty to speak, and, therefore, that the non-voting creditors' failure to object to the plan (or to reject the plan) should be deemed that they affirmatively consented to that release. *Id*. at 460. The court rejected this argument because the debtors failed to show that the nonvoting creditors' silence was misleading or that the nonvoting creditors' silence signified their intention to consent to the release (finding that silence could easily be attributable to other causes). *Id*. The debtors did not contend that an ongoing course of conduct between themselves and the nonvoting creditors gave rise to a duty to speak. *Id*.

33. "Charging all inactive creditors with full knowledge of the scope and implications of the proposed third-party releases, and implying a 'consent' to the third-party releases based on the creditors' inaction, is simply not realistic or fair and would stretch the meaning of 'consent' beyond the breaking point." *In re Chassix Holdings, Inc.*, 533 B.R. 64, 88 (Bankr. S.D.N.Y. 2015). Moreover, the court in *SunEdison* observed that parties who are solicited, but do not vote, may have failed to vote for reasons other than an intention to assent to the releases. *SunEdison*, 576 B.R. at 461. As the *Emerge Energy Services, LP* court noted, "A party's receipt of a notice imposing an artificial opt-out requirement, the recipient's *possible* understanding of the meaning and ramifications of such notice, and the recipient's failure to opt-out simply do not qualify" as waiver through a party's silence or inaction. *In re Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019).

34. After the Supreme Court's Decision in *Harrington v. Purdue Pharma*, *L.P.*, one Court in the Northern District of Texas has recently addressed whether the failure to exercise an "opt-outs" is effective to constitute consent to third party releases at confirmation and in the context of a motion to enforce a confirmation order.[6] In *In re Ebix, Inc.*, the Court denied the

---

[6] As Judge Everett noted in Ebix and 4 West Holdings, Inc., there are conflicting cases concerning the effectiveness of opt-out releases. *See* Ebix Transcript, p. 9 at 19, 4 West Transcript, p. 3 at ln. 17-19. Judge Everett further noted

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION** Page 13

effectiveness of opt-out third party releases for creditors who failed to return a ballot or, otherwise, failed to affirmatively indicate their specific consent to the plan or the third party release. In disallowing the inclusion of the third-party release in the proposed plan, the Court noted "[n]othing in the Bankruptcy Code or Bankruptcy Rules provides for such relief, and under Texas contract law, that the parties agree governs the third-party release under the Debtors' proposed plan, silence does not equal the consent of the affected claimants on this record." *See In re Ebix, Inc. et al*, Transcript of Ruling on Amended Chapter 11 Plan, before the Honorable Scott W. Everett held on August 2, 2024, Case No. 24-80004-SWE-11, United States Bankruptcy Court for the Northern District of Texas. (the "Ebix Transcript" Exhibit A). The *Ebix* ruling conforms to that Court's prior ruling on the permissibility and effectiveness of an opt-out third-party release in *In re 4 West Holdings, Inc.*, where the court found that there had not been "a determination, either in the confirmation order or since, on whether, in fact, the opt-out releases are permitted by applicable law." See *In re 4 West Holdings, Inc*., Transcript of Proceedings before the Honorable Scott W. Everett held on October 18, 2022, on Motion to Enforce Confirmation Order and Releases and Injunctions Thereunder, Case No. 18-30777-SWE-11, United States Bankruptcy Court for the Northern District of Texas, Docket Entry No. 2086 (the "4 West Transcript, Exhibit B"). *See* 4 West Transcript, pp. 5-6 at ln.19-2. *See* also 4 West Transcript, p. 13 at ln. 22-23. Although Judge Everett found those parties who returned a ballot,-- but failed to opt-out of the third party release-- consented to that release, for the reasons discussed above, the better view requires affirmative action to knowingly release third parties.

---

that while no other bankruptcy judge in the Northern District of Texas had written on the issue, the other four judges in the Northern District of Texas had approved opt-out release structures and that he, respectfully, was parting ways with his colleagues. *See* 4 West Transcript, p. 6 at ln. 14-16, Ebix Transcript, p. 5, ln. 8-11.

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION**     **Page 14**

35. The Court noted that, as the Third Amended Plan provides in the present case, both the *Ebix* and *4 West Holdings, Inc*. plans were governed by the laws of the State of Texas. *See* Ebix Transcript p. 5, ln. 12-16, 4 West Transcript, p. 6 at ln. 21-22. The Court has determined that since "there are no Federal Bankruptcy Rules or Federal Civil Rules that govern whether or not somebody can assent through silence to a deemed release" the Court must look to state law to determine whether opt-out provisions are effective to confer consent to a third-party release. *See* 4 West Transcript, p. 7 at ln. 1-6.

36. The Court in *Ebix* looked to the laws of the State of Texas to determine whether silence in the face of an offer in contract constitutes consent. *See* Ebix Transcript, p. 16, ln. 9-25. In *Ebix*, the Court stated "[o]nce consent is viewed from a contractual perspective, though, it is exceedingly difficult to construe the failure to opt out of a third-party release as valid consent." Ebix Transcript, p. 15, ln. 18-20. The Court found that silence does not equal consent under Texas contract law and that none of the three exceptions to that principle—that assent to contract is supported by the parties' course of conduct, that assent to contract arises where the offeree accepts the benefit of the offer, and that assent to contract exists where the offeree misleads the offeror and that the offeree, by remaining silent, intends to accept the offer—apply to the opt out provisions in *Ebix*. *See* Ebix Transcript p. 16-19, *See also* 4 West Transcript, pp. 18-19 at ln. 23 to 21.

37. The Court has also rejected the notion that failing to opt-out from a third-party release is akin to a default under a complaint, failure to file a proof of claim timely, or failure to respond to a claim objection. "All of those examples involve specific Bankruptcy or Federal Civil Rules that permit affirmative relief to be taken against a party if they fail to act. Here, there are no comparable rules providing for the result of a determination of deemed assent or consent to a

---
**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION** Page 15

contractual release through silence." *See* 4 West Transcript, pp. 20-21 at ln. 23-14. The Court also held that silence does not constitute consent to an Article I final adjudication of a matter by a bankruptcy court, because such consent is required to be "knowing and voluntary." 4 West Transcript, pp. 21-22 at ln. 25-18.

38. The failure of a party to opt out of the Third-Party Release is not consent to the Third-Party Release. As the *SunEdison* court, the *Chassix* court, the *4 West Holdings* Court and the *Ebix* Court observed, there may be myriad reasons that a party may not have checked off the box on a form and sent it back. It is not reasonable, and Texas law does not support the conclusion, that such failure to act indicates that such party has knowingly, deliberately and expressly agrees to be bound by the Third-Party Release. Construing a failure to return an opt-out form as affirmative consent cuts against Texas law of contracts.

39. Like in *Ebix*, *4 West Holdings, Inc.* and in *SunEdison* (applying the contract laws of New York, which are similar to those of Texas), none of the three exceptions substantiating implied consent, through silence, apply here. There is no course of conduct between the Debtors and their creditors that would imply consent to the Third-Party Release. And while the creditors may accept payments under the Third Amended Plan, should it be confirmed, they would receive those payments whether or not they opted out of the Third-Party Release. There is no independent consideration that such claimants are knowingly receiving that would constitute some kind of acceptance of benefit. The mere acceptance of payments to which they may be entitled under a plan is not the silent acceptance of the benefit of the "bargain" of the Third-Party Release sufficient to confer consent.

40. With regard to misleading conduct, the *SunEdison* debtors argued that the warning in the disclosure statement and on the ballots regarding the potential effect of silence gave rise to

a duty to speak, and the nonvoting creditors' failure to object to the plan or to reject the plan should be deemed their consent to the release. *SunEdison*, 576 B.R. at 460. The *SunEdison* court rejected this argument because the debtors failed to show that the nonvoting creditors' silence was misleading or that the nonvoting creditors' silence signified their intention to consent to the release (finding that silence could easily be attributable to other causes). *Id*. As set forth *supra*, the Court came to a similar conclusion in *4 West Holdings, Inc.* and *Ebix, Inc.*

41. Importantly in this case, those receiving Non-Voting Notices did not receive the full solicitation package. While information concerning how to obtain a copy of the Amended Disclosure Statement, the Amended Plan, and the Plan Supplement was provided on the Non-Voting Status Notice, it is not disputed that those parties were not provided sufficient notice in the form of the underlying documents which would have more fully disclosed the parameters of the plan provisions and releases from which they were expected to "opt out". Any party receiving a Non-Voting Status Notice would have to take affirmative action to obtain those documents in order to review and understand fully what was being asked of them. Accordingly, the parties who received the Non-Voting Notice may not fully comprehend the extent of the third-party release due to a lack of notice. The Court in *4 West Holdings, Inc.* similarly expressed concern about lack of notice. *See* 4 West Transcript, p. 16 at ln. 2-7 (noting that there was no evidence that the debtors in that case gave notice to the creditor of the bankruptcy filing, the plan and the ballot).

42. It is equally implausible to suggest that a party returning a ballot rejecting the Plan but neglecting to opt out of the Third-Party Release, is evidencing consent to the Third-Party Release. Not only is there no "mutual agreement" as to the Plan, much less the Third-Party Release, the creditor has actually expressly stated its rejection of the Plan. A Non-Voting party

who neglects to opt out of the Third-Party Release has also failed to evidence its affirmative consent to the Third-Party Release.

43. Moreover, the definition of Released Parties here includes "Related Parties"—a list of myriad different categories of people and entities. The Plan makes no attempt to identify any individual person or entity falling into any of these categories, meaning that the total universe of the parties being released is unknown (and likely unknowable). Unless the "Related Parties" are individually identified, there can be no plausible argument that a creditor has truly "consented" to release that party, and thus, that the third-party release here is consensual. There is a similar problem in the definition of Releasing Parties, which extends to all Affiliates and Related Parties of the entities releasing the Released Parties.

44. Accordingly, the Court should strike the Third-Party Release provisions in the Third Amended Plan.

**The Third Amended Plan imposes a sweeping injunction to enforce the nonconsensual plan release and exculpation that is not authorized under the Code.**

45. This Court also may not approve the injunction enforcing the Third-Party Release and exculpation because *Purdue* stands for the proposition that non-consensual third-party releases are not permitted by the Bankruptcy Code. *See Purdue Pharma*, 144 S.Ct. at 2088. As the *Purdue* court noted, the Bankruptcy Code allows courts to issue an injunction in support of a non-consensual, third-party release in exactly one context: asbestos-related bankruptcies, and these cases are not asbestos-related. *See Purdue Pharma*, 144 S. Ct. at 2085 (citing 11 U.S.C. § 524(e)). Even if nondebtor releases are deemed consensual there is no Code provision that authorizes chapter 11 plans or confirmation orders to include injunctions to enforce them. Further, such an injunction is not warranted by the traditional factors that support injunctive relief because, if the release is truly consensual, there is no threatened litigation and no need for an injunction to prevent

"immediate and irreparable harm" to either the estates or the released parties. A consensual release may serve as an affirmative defense in any ensuing, post-effective date litigation between the third party releasees and releasors, but there is no reason for this Court to be involved with the post-effective date enforcement of those releases. Moreover, this injunction essentially precludes any party deemed to consent to this release from raising any issue with respect to the effectiveness or enforceability of the release (such as mistake or lack of capacity) under applicable nonbankruptcy law.

### The Third Amended Plan should clarify whether claims of governmental entities are released.

46. The "police and regulatory power" exception to the automatic stay found at 11 U.S.C. § 362(b)(4) is designed to ensure that the stay "does not impede government's ability to protect public health and safety." *In re Wyly*, 526 B.R. 194, 198 (Bankr. N.D. Tex. 2015).

47. The Debtors should modify the Third Amended Plan to clarify that no party shall be released from any causes of action or proceedings brought by any governmental entity in accordance with its regulatory functions, including but not limited to criminal and environmental matters. The United States Trustee requests that the Debtors include the following language in the Plan:

> Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in

the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

Wherefore, the United States Trustee respectfully requests that the Court deny confirmation of the Third amended plan and grant to the United States Trustee such other and further relief as is just and proper.

DATED: August 30, 2024				Respectfully submitted,

							KEVIN M. EPSTEIN
							UNITED STATES TRUSTEE

							*/s/ Elizabeth Ziegler Young*
							<u>*with permission Lisa L. Lambert*</u>
							Elizabeth Ziegler Young
							Trial Attorney
							Texas State Bar No. 24086345 (Also NY)
							Lisa L. Lambert
							Texas State Bar No. 11844250 (Also NY)

							Office of the United States Trustee
							1100 Commerce Street, Room 976
							Dallas, Texas  75242
							(214) 767-1247
							elizabeth.a.young@usdoj.gov

### Certificate of Service

The undersigned counsel certifies that copies of the foregoing document were served on August 30, 2024 via ECF to those parties requesting service via ECF in this case.

							*/s/  Elizabeth Ziegler Young*
							Elizabeth Ziegler Young