PILLSBURY WINTHROP SHAW PITTMAN LLP
Hugh M. Ray
L. James Dickinson
Reed C. Trechter
609 Main Street, Suite 2000
Houston, Texas 77002
Tel: (713) 276-7600
hugh.ray@pillsburylaw.com
james.dickinson@pillsburylaw.com
reed.trechter@pillsburylaw.com

-and-

Joshua D. Morse
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Tel: (415) 983-1202
joshua.morse@pillsburylaw.com

*Counsel for Sentynl Therapeutics, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>EIGER BIOPHARMACEUTICALS, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-80040 (SGJ)<br><br>(Jointly Administered) |

**SENTYNL THERAPEUTICS INC.'S OMNIBUS EMERGENCY MOTION FOR ENTRY OF AN ORDER: (I) SETTING STATUS CONFERENCE AND CONTINUING EVIDENTIARY HEARING; (II) AUTHORIZING ADDITIONAL PAGES FOR SENTYNL'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR ALLOWANCE; AND (III) AUTHORIZING SENTYNL TO FILE ITS REPLY BRIEF IN SUPPORT OF ITS MOTION FOR ALLOWANCE AND SUPPORTING EXHIBITS UNDER SEAL**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Eiger BioPharmaceuticals, Inc. (1591); EBPI Merger Inc. (9986); EB Pharma LLC (8352); Eiger BioPharmaceuticals Europe Limited (N/A); and EigerBio Europe Limited (N/A). The Debtors' service address is 2100 Ross Avenue, Dallas, Texas 75201.

> **Emergency relief has been requested. Relief is requested not later than 4:00 p.m. prevailing Central Time on April 4, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Sentynl Therapeutics, Inc. ("Sentynl")[2] submits this *Omnibus Emergency Motion for Entry of an Order: (I) Setting Status Conference and Continuing Evidentiary Hearing; (II) Authorizing Additional Pages for Sentynl's Reply Brief in Support of its Motion for Allowance; and (III) Authorizing Sentynl to File Its Reply Brief in Support of its Motion for Allowance and Supporting Exhibits Under Seal* (the "Motion"). In support thereof, Sentynl respectfully states as follows:

## RELIEF REQUESTED & INTRODUCTION

1. Sentynl seeks three forms of relief, all related to its Motion for Allowance[3] or forthcoming reply in support ("Reply"). ***First***, Sentynl requests an order converting the hearing on its Motion for Allowance currently set for April 15, 2025,[4] to a status conference and setting an evidentiary hearing on the Motion for Allowance on or after May 23, 2025. ***Second***, Sentynl requests an order allowing it to exceed LBR 7007-2's 10-page limit for reply briefs. ***Third***, Sentynl

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion for Allowance.

[3] *Motion for Allowance of Administrative Expense Claim* [Docket No. 729] ("Motion for Allowance").

[4] It is unclear whether the Court intends to receive evidence at the April 15, 2025, hearing. The hearing was set by the Liquidation Trustee, whose counsel initially represented to Sentynl in an email that the hearing would be a "***status conference setting***." The Liquidation Trustee's counsel has since backtracked from their earlier position, asserting evidence will be presented at the April 15, 2025, hearing. Sentynl attempted to resolve the dispute and enter into an agreed discovery and hearing schedule with the Liquidating Trustee. The Liquidating Trustee declined.

requests an order authorizing it to file an unredacted version of its Reply and supporting materials, which will contain confidential, commercially sensitive, and trade secret material, under seal.

2. Emergency relief is appropriate. Sentynl's Reply is currently due April 7, 2025. The evidentiary hearing on Sentynl's Motion for Allowance is currently set for April 15, 2025, but discovery is only now commencing. Neither date allows adequate time for a motion on regular notice. If emergency relief is not granted, Sentynl will be prejudiced because:

  a. the parties will not have had time to conduct (or have conducted in earnest) adequate discovery;

  b. Sentynl will be forced to conduct and defend duplicative discovery and depositions – from EIT[5] and from the Liquidating Trustee[6] – over the same subject;

  c. Sentynl will not have sufficient pages to fully and fairly address the Liquidating Trustee's arguments; and

  d. without sealing, Sentynl would be forced to omit relevant, but confidential, material in its reply.

3. Sentynl has repeatedly met and conferred with the Liquidating Trustee.[7] The Liquidating Trustee does *not* oppose Sentynl's request for additional pages, nor does it oppose Sentynl's request to file the Reply and supporting documents under seal.

4. The Liquidating Trustee has indicated, however, that it *does* oppose Sentynl's request to convert the April 15, 2025, evidentiary hearing on the Motion for Allowance to a status

---

[5] EIT Pharma, Inc., formerly known as Eiger InnoTherapeutics, Inc. ("EIT").

[6] Dundon Advisers, LLC, as Liquidating Trustee under the confirmed chapter 11 plan.

[7] Counsel for Sentynl and the Liquidating Trustee have conferred several times via email, telephone, and videoconference. Sentynl has repeatedly requested the Liquidating Trustee agree to continue the hearing on the Motion for Allowance to: (1) allow time for discovery; and (2) allow for resolution of the Motion to Enforce, which may itself resolve many of the issues in the Motion for Allowance. The Liquidating Trustee has refused, asserting an immediate hearing is necessary so the Liquidating Trustee can make distributions to unsecured creditors and equity holders.

3

conference and set an evidentiary hearing for a later date. Instead, it requests multiple depositions and thousands of documents in advance of the April 15 hearing.

## BACKGROUND

5. Sentynl purchased the right and ability to make the drug Zokinvy® in the Zokinvy Asset Purchase Agreement,[8] but the Liquidating Trustee breached that by making a Settlement Agreement[9] with EIT that unreasonably interferes with the Zokinvy® supply chain. Sentynl was forced to file the Motion for Allowance to protect its rights.

6. On March 7, 2025, the Liquidating Trustee and the Plan Administrator[10] filed an Objection to the Motion for Allowance.[11] According to the Objection, Sentynl's Reply is due April 7, 2025. Also on March 7, 2025, Sentynl filed its related Motion to Enforce[12] the Zokinvy Sale Order.

7. On March 21, 2025, the Liquidating Trustee filed a notice[13] setting a hearing on the Motion for Allowance and the Motion to Enforce[14] for April 15, 2025.

---

[8] That certain *Asset Purchase Agreement* by and between Sentynl Therapeutics, Inc., as Purchaser, and Eiger BioPharmaceuticals, Inc., as Seller, dated March 31, 2024 (the "Zokinvy APA"), annexed as Exhibit 1 to the *Order (I) Approving the Sale of the Debtors' Zokinvy Assets, (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (III) Granting Related Relief* [Docket No. 162] ("Zokinvy Sale Order"), and as from time to time amended in accordance with the Zokinvy Sale Order or further order of this Court, including by the First Amendment to the Zokinvy Asset Purchase Agreement attached to the Zokinvy Sale Order.

[9] Docket No. 778-5, Exh. E (the "Settlement Agreement").

[10] Gary Broadbent, as plan administrator under the confirmed chapter 11 plan (the "Plan Administrator").

[11] *Objection and Response of the Liquidating Trustee and Plain Administrator to Motion for Allowance of Administrative Expense Claim of Sentynl Therapeutics, Inc.* under seal [Docket No. 777] ("the "Objection").

[12] *Motion (I) to Enforce the Zokinvy Sale Order and (II) for Contempt Against Eiger InnoTherapeutics, Inc.* [Docket Nos. 779, 781] (the "Motion to Enforce").

[13] Docket No. 786.

[14] Sentynl filed the Motion to Enforce, which involves a dispute between Sentynl and EIT. Yet the Liquidating Trustee (not Sentynl or EIT) set *Sentynl's* Motion to Enforce for hearing *without* conferring with Sentynl and without discovery.

4

8. On March 24, 2025, EIT filed the EIT Emergency Motion,[15] claiming that it bought some unspecified inventory that is not listed as inventory.

9. On March 25, 2025, Sentynl filed its Response to EIT Emergency Motion, opposing the relief sought and requesting a status conference.[16]

10. On March 26, 2025, EIT filed a notice[17] setting a hearing on the EIT Emergency Motion for April 15, 2025.

11. On March 27, 2025, the Liquidating Trustee and Plan Administrator filed their Limited Response[18] to the Motion to Enforce. In the Limited Response, and building off arguments made in the Objection, the Liquidating Trustee and Plan Administrator requested that Sentynl disclose proprietary and confidential information relating to the Zokinvy® supply chain to show how the Zokinvy supply chain has been unreasonably interfered with.[19] That information is also relevant to (indeed core to) the Motion for Allowance.

12. On April 1, 2025, Sentynl and EIT filed a *Joint Stipulation and Agreed Order* setting forth an agreed discovery and briefing schedule for the Motion to Enforce [Docket No. 796] (the "Joint Stipulation").

---

[15] *Emergency Motion to Confirm Terms of Lonafarnib/Lambda Sale Order* [Docket No. 787] (the "EIT Emergency Motion").

[16] *(I) Response to EIT Pharma, Inc., Formerly Known as Eiger Innotherapeutics, Inc.'s Emergency Motion to Confirm Terms of Lonafarnib/Lambda Sale Order and (II) Request for Status Conference Pursuant to 11 U.S.C. § 105(d)* [Docket No. 790]

[17] Docket No. 792.

[18] *Limited Response of the Liquidating Trustee and Plan Administrator to Motion of Sentynl Therapeutics, Inc. to (I) Enforce the Zokinvy Sale Order and (II) For Contempt Against Eiger Innotherapeutics, Inc.* [Docket No. 793] (the "Limited Response").

[19] "If Sentynl wishes to raise concerns regarding Progeria patients' access to Zokinvy as a reason for ignoring contractual provisions, it should first disclose exactly how long its existing supply will last to treat current and projected future Progeria patients, and how long it will take to get another manufacturer up and running." Limited Response at 6.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b). Sentynl consents to the Court's entry of a final order on this Motion. Venue is proper under 28 U.S.C. §§ 1408 and 1409 and the relief requested in this motion is predicated on 11 U.S.C. § 105(a) and (d), §107(b), and Bankruptcy Rules 1001, 9018, 9014.

## BASIS FOR RELIEF REQUESTED

### I. THE COURT SHOULD CONVERT THE APRIL 15, 2025, HEARING ON THE MOTION FOR ALLOWANCE TO A STATUS CONFERENCE AND SET A FUTURE EVIDENTIARY HEARING

14. Section 105 of the Bankruptcy Court provides that the Court "shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case." 11 U.S.C. § 105(d). For at least three reasons, the Court should exercise its authority and discretion to convert the April 15, 2025, hearing on the Motion for Allowance to a status conference and set an evidentiary hearing either: (a) at the same time as the evidentiary hearing on Sentynl's Motion to Enforce; or (b) on a date after the Court has adjudicated (or the parties have resolved) the Motion to Enforce.

15. ***First***, the Court is being asked to address identical legal and factual issues, identical arguments, and the same evidence in the Motion for Allowance and Motion to Enforce. Under Fed. R. Bankr. P. 1001, the Court and all parties should act "to secure the just, speedy, and inexpensive determination of every case and proceeding." The Court gains efficiencies by consolidating discovery and hearing schedules on the two motions. Documents would only have to be reviewed and produced once, witnesses will only have to be deposed once, and the Court would only have to hold one hearing on these issues. On the other hand, if the Court takes the

Motion for Allowance on April 15, 2025 (with incomplete discovery and abbreviated time), and the Motion to Enforce is heard four weeks later, the efficiencies are lost and the costs are increased.

16. The Liquidating Trustee and EIT have placed Sentynl in the middle of three contested matters: (1) the Motion for Allowance; (2) the Motion to Enforce; and (3) EIT's Emergency Motion. All three mostly overlap, including legal argument and documentary evidence and testimony necessary to prosecute or defend them.

17. Very briefly:

   a. The Motion for Allowance generally asserts that Debtor Eiger Bio breached a Sublicense Agreement[20] between it and Sentynl post-petition by assigning, without limitation, the Lonza Bend MSA[21] to EIT and by entering into a surprise, midnight settlement agreement with EIT, both of which violate the Zokinvy APA, frustrate its purpose, and interfere with the Zokinvy® supply chain.

   b. The Motion to Enforce generally asserts that EIT has interfered with the Zokinvy APA by blocking or refusing to permit a direct relationship between Sentynl and Lonza Bend[22] and Corden[23] which, effectively, interferes with Sentynl's supply chain and hinders Zokinvy® manufacturing and commercialization.

   c. The exact purpose of the EIT Emergency Motion was unclear but has now been clarified to be a motion about inventory that is not listed. In it, EIT claims ownership of materials in the supply chain at Corden. Likewise, the EIT Emergency Motion seeks confirmation that the "Corden Contracts" were assigned to EIT, but does not mention that any assignment must be subject to Sentynl's right to manufacture and commercialize Zokinvy®, as set forth in the earlier Zokinvy APA and Zokinvy Sale Order. In other words, the EIT Emergency Motion cannot interfere with the supply chain or else it must be denied.

---

[20] That certain *Sublicense Agreement, dated as of the Closing Date, by and among Purchaser and the Seller*, substantially in the form attached to the Zokinvy Asset Purchase Agreement as Exhibit E [filed under seal pursuant to order at Docket No. 188].

[21] That certain *Commercial Manufacturing and Supply Agreement with Lonza Bend, dated October 9, 2019*.

[22] Bend Research, Inc., a Lonza Company (or any affiliate).

[23] Corden Pharma Colorado (or any affiliate).

18. In context, the three Contested Matters have significant legal and evidentiary overlap. They deal with the coincident issues of:

   a. Who owns what and who has what rights under the earlier Zokinvy APA (Motion for Allowance, Motion to Enforce, and EIT Emergency Motion);

   b. Who owns what and who has what rights under the later Lonafarnib/Lambda APA (Motion for Allowance, Motion to Enforce, and EIT Emergency Motion);

   c. Whether Sentynl has recourse against EIT for interfering with its rights under the Zokinvy APA and Zokinvy Sale Order (Motion for Allowance and EIT Emergency Motion); and

   d. Whether Sentynl has an administrative expense claim based on a "sale" of materials the estate did not own or an assignment of contracts in a manner that it could not do because either would interfere with the manufacture and commercialization of Zokinvy® (Motion for Allowance).

19. In addition to overlapping legal issues, the parties will present the same, or extraordinarily similar, evidence. That will include documents and communications from Sentynl, EIT, and the Liquidating Trustee with each other, the Debtors, Lonza Bend, and Corden related to the Lonza Bend MSA and the Corden MSA.[24] It will also include testimony from the same individuals who were involved in the various transactions.

20. Because of the coextensive issues and evidence, the Court should have the Motion to Enforce and Motion for Allowance heard together. The two motions should share a discovery timeline and plan. That captures the efficiency of presenting witnesses for a single deposition and a single hearing.

21. **_Second_**, resolution of the Motion to Enforce will likely streamline the Motion for Allowance. Put simply, if the Motion to Enforce is granted (so the supply chain for Zokinvy® is restored), Sentynl's will have a smaller administrative expense claim and many of the issues in the

---

[24] That certain *Master Services Agreement between Eiger BioPharmaceuticals, Merck Sharpe & Dohme Corporation, and CordenPharma Colorado.*

8

Motion for Allowance should be resolved or mooted.  Thus, the Motion to Enforce is a gating issue to the Motion for Allowance.  The Court would benefit from ruling on the Motion to Enforce either before or at the same time as the Motion for Allowance.  The Liquidating Trustee has not provided any principled reason for why those efficiencies should not be captured.

22.     ***Third***, the Court should not conduct an evidentiary hearing on this abbreviated timeline when there has not been a reasonable opportunity for discovery so that parties can fully and fairly present their case.  The Liquidating Trustee proposes a schedule where the parties would have to collect, review, and *produce thousands of documents in less than seven days*.  The parties would then have another *seven days to depose up to ten witnesses* scattered throughout the country, from New York to North Carolina to Dallas to Southern California.[25]  Sentynl proposes, instead, the Court apply the schedule that EIT and Sentynl agreed to for the Motion to Enforce.  That schedule is expedited, but reasonable.  And it would allow the parties to be fully prepared to present full and complete evidence to the Court in a logical manner.

23.     In sum, there are significant efficiencies to be gained by converting the April 15, 2025, hearing on the Motion for Allowance to a status conference and setting an evidentiary hearing either at the same time as the Motion to Enforce, or shortly after.  In addition, the additional time will allow the parties to be fully prepared and present the Court with the best evidence available in the most logical manner possible, helping it to make a fully informed and reasoned decision.  For all those reasons, Sentynl requests the Court continue the evidentiary hearing on its Motion for Allowance to May 23, 2025, or as soon thereafter as the matter may be heard.

## II.    SENTYNL SHOULD BE PERMITTED TO FILE A REPLY IN EXCESS OF 10 PAGES, EXPECTED TO BE 20 PAGES

---

[25] Each party has served four deposition subpoenas.  The Liquidating Trustee has identified another two witnesses (one from each side) that may also be the subject of a deposition or trial subpoena.  The parties are currently meeting and conferring about the number and timing of depositions.

9

24. As required by LBR 7007-2 extraordinary and compelling reasons exist to exceed the reply brief page limit to permit Sentynl to provide a complete picture of applicable law and relevant facts supporting its Motion for Allowance. Sentynl expects the reply will be 20 pages.

25. The Objection's primarily claim is that the Liquidating Trustee met contractual obligations to Sentynl by using "reasonable efforts" to avoid disrupting Sentynl's supply chain and/or ability to manufacture and commercialize Zokinvy®. Objection, ¶¶ 31-33. Inherent in that argument is the proposition that the Liquidation Trustee properly analyzed and understood:

    a. what, exactly, is required to manufacture and commercialize Zokinvy®;

    b. how the assignment of the Lonza Bend MSA and Corden MSA to EIT, without alteration, would affect the manufacture and commercialization of Zokinvy®; and

    c. the required quantification/computation of the effects of the assignment to determine if those adverse effects were "reasonable".

The Liquidation Trustee, however, does meaningfully not discuss these points in its Objection. Sentynl suspects the Liquidating Trustee did not do these things at all.

26. However, Sentynl did. So Sentynl's reply will provide details (if the reply is sealed) about how the Liquidating Trustee's assignment of the Lonza Bend MSA and Corden MSA and Settlement Agreement unreasonably interfere with the Zokinvy® supply chain, including because of:

    a. Regulatory requirements for producing commercial drugs, including full Good Manufacturing Practice ("GMP") compliance;

    b. The process for achieving GMP compliance for replacement manufacturers and validating drug substance and drug substance intermediate batches in the event the existing supply chain is not reinstated;

    c. The risk and result of non-compliance resulting from the imposition of a non-GMP compliant intermediary with no quality control program (*i.e.*, EIT) within the Zokinvy® supply chain (*e.g.*, prohibition on release of the drug to existing and new Progeria patients);

  d. The time remaining before existing inventories will be depleted without relief from the Court, accounting for the expiration dates for existing inventories and shelf-life requirements for various markets; and

  e. The time for which no Zokinvy® will be available for various markets (*e.g.*, the United States, the European Union, and Japan) after existing inventories are depleted and before a resupply is available if Sentynl must qualify a replacement manufacturing organization, perform a "tech transfer," validate the new process, and obtain regulatory approval for new batches to be released to the public.

27. Put simply, additional pages are necessary to address the complex regulatory framework governing pharmaceuticals, explain the process for qualifying replacement manufacturers, address the real and serious risks and costs of the breach of the Zokinvy APA, and, most importantly, position the Court to make an informed and reasoned decision.

28. Accordingly, Sentynl asserts that extraordinary and compelling reasons justify filing a Reply brief that is greater than 10 pages. As noted above, the Liquidating Trustee does not oppose this relief, subject to the Court's approval. Sentynl's reply should be 20 pages.

### III.  SENTYNL SHOULD BE AUTHORIZED TO FILE ITS REPLY AND SUPPORTING DOCUMENTS UNDER SEAL

29. Section 105(a) of the Bankruptcy Code codifies the inherent equitable powers of a bankruptcy court and empowers it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders that will protect entities from potential harm that may result from the disclosure of certain confidential information. *See In re Gen. Homes. Corp.*, 181 B.R. 898, 903 (Bankr. S.D. Tex. 1995). Bankruptcy Rule 9018 defines the procedures by which a party may move for relief under section 107(b) of the Bankruptcy Code. This section provides, in relevant part that, "[o]n request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may— protect an entity with respect to a trade secret or confidential research, development, or commercial

11

information." 11 U.S.C. § 107(b)(1). Local Rule 9077-1(b) provides that parties may request to file documents under seal even if no statute or rule requires them to be filed under seal.

30. Once the Court determines that a party in interest is seeking protection of information that falls within one of the categories enumerated in section 107(b), the "court is required to protect a requesting interested party and has no discretion to deny the application." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (stating that section 107(b)(1) of the Bankruptcy Code creates an exception to the general rule that court records are open to examination by the public); *see also In re Global Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (stating that the purpose of Bankruptcy Rule 9018 is to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury").

31. Courts have also stated that commercial information need not rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code. *See In re Meyrowitz*, No. 06-31660-bjh-11, 2006 WL 6544093, at *2 (Bankr. N.D. Tex. Oct. 27, 2006); *Orion Pictures*, 21 F.3d at 28.

32. Here, information contained in the Reply is proprietary and confidential (the "Confidential Information") and warrants protection under section 107(b) of the Bankruptcy Code.

33. This Court has previously sealed documents related to various sale transactions. *See* Docket Nos. 188, 773, 783, and the creditors and any parties-in-interest to these chapter 11 cases will not be prejudiced by allowing Sentynl to file the Confidential Information under seal.

34. Accordingly, Sentynl asserts that good cause exists to authorize filing of the Reply under seal. As noted above, the Liquidating Trustee does not oppose this relief (and sought and was granted the same relief for its Objection and its Limited Response).

## EMERGENCY CONSIDERATION

35. The hearing on Sentynl's Motion for Allowance is currently set for April 15, 2025. There is insufficient time for a motion to continue that hearing to be heard on regular notice. Failure to receive the relief requested (a short continuance) would jeopardize the parties' ability to present a full and complete evidentiary record and, thus, the Court's ability to make a fully informed decision.

36. Sentynl's Reply is currently due April 7, 2025. There is insufficient time for a motion authorizing additional pages or filing under seal. The additional pages are necessary to present a contextual and complete response to the Trustee's Objection. Filing under seal is necessary to protect confidential and commercially sensitive information, necessary to resolution of the Motion for Allowance (and Motion to Enforce).

37. Sentynl therefore requests that the Court approve the relief requested herein on an emergency basis.

## NOTICE

38. Sentynl will provide notice of this Motion to Seal to the following: (a) the U.S. Trustee for the Northern District of Texas; (b) all other parties-in-interest who are required to receive notice pursuant to the Plan; (c) the Liquidating Trustee and its counsel; (d) the Plan Administrator; and (e) EIT and its counsel. No other or further notice is needed in light of the nature of the relief requested.

Dated: April 2, 2025          Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: */s/ Hugh M. Ray, III*
    Hugh M. Ray, III
    Texas Bar No. 24004246
    L. James Dickinson
    Texas Bar No. 24105805
    Reed C. Trechter
    Texas Bar No. 24129454
    609 Main Street, Suite 2000
    Houston, TX 77002
    Tel: (713) 276-7600
    hugh.ray@pillsburylaw.com
    james.dickinson@pillsburylaw.com
    reed.trechter@pillsburylaw.com

    -and-

    Joshua D. Morse
    Four Embarcadero Center, 22nd Floor
    San Francisco, CA 94111-5998
    Tel: (415) 983-1202
    joshua.morse@pillsburylaw.com

***Counsel for Sentynl Therapeutics, Inc.***

## **CERTIFICATE OF SERVICE**

   I certify that, on April 2, 2025, I caused a copy of the foregoing Motion to Seal to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas and to be emailed to the following parties.

*Counsel for EIT*
GOODWIN PROCTOR LLP
Kizzy Jarashow
kjarashow@goodwinlaw.com
David Chen
davidchen@goodwinlaw.com

*Counsel for EIT*
GRAY REED
Jason S. Brookner
jbrookner@grayreed.com
Emily F. Shanks
eshanks@grayreed.com
London England
lengland@grayreed.com

*Counsel for the Liquidating Trustee*
PORZIO, BROMBERG & NEWMAN, P.C.
Warren J. Martin Jr.
WJMartin@pbnlaw.com
Rachel A. Parisi
RAParisi@pbnlaw.com

*Counsel for the Liquidating Trustee*
MCKOOL SMITH, PC
John J. Sparacino
jsparacino@mckoolsmith.com
S. Margie Venus
mvenus@mckoolsmith.com
Travis E. DeArman
tdearman@mckoolsmith.com

*Associate & Assistant General Counsel for Lonza*
Lara Crow
lara.crow@lonza.com
Stacy Broad
stacy.broad@lonza.com

*General Counsel for Corden*
Naoki Takei
naoki.takei@cordenpharma.com
Richard Janovjak
richard.janovjak@cordenpharma.com

                */s/ Hugh M. Ray, III*
                Hugh M. Ray, III