**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| EIGER BIOPHARMACEUTICALS, INC., *et al.*[1] | ) |
| | ) Case No. 24-80040 (SGJ) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

## JOINT STIPULATION AND AGREED ORDER

Upon *Sentynl Therapeutics, Inc.'s Expedited Motion for Interim Equitable Relief* [Docket Nos. 834 and 835] (the "Motion"), Sentynl Therapeutics, Inc. ("Sentynl"), and EIT Pharma, Inc., formerly known as Eiger InnoTherapeutics, Inc. ("EIT"), hereby stipulate and agree as follows (the "Stipulation and Agreed Order"):

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Eiger BioPharmaceuticals, Inc. (1591); EBPI Merger Inc. (9986); EB Pharma LLC (8352); Eiger BioPharmaceuticals Europe Limited (N/A); and EigerBio Europe Limited (N/A). The Debtors' service address is 2155 Park Boulevard, Palo Alto, California 94306.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1.       The interim settlement agreement, as stated on the record at the hearing before the Court on the Motion on April 29, 2025 (the "Hearing"), is hereby approved in all respects (the "Interim Settlement Agreement").

2.       The unsealed portion of the transcript of the Hearing, which sets forth the oral terms and conditions of the Interim Settlement Agreement, is attached hereto as **Exhibit A**, as clarified to the extent necessary by the agreed script of the Interim Settlement Agreement read into the record during the Hearing, which is attached here to as **Exhibit B** out of an abundance of caution.

3.       All parties are authorized and directed to abide by and comply with the terms of this Stipulation and Agreed Order and the Interim Settlement Agreement.

4.       This Court shall retain exclusive jurisdiction over all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation and Agreed Order and the Interim Settlement Agreement.

# # # END OF ORDER # # #

4899-5817-7084

**AGREED AS TO FORM AND CONTENT:**

**GRAY REED**

By:    /s/ Jason S. Brookner
　　　Jason S. Brookner
　　　Texas Bar No. 24033684
　　　Emily F. Shanks
　　　Texas Bar No. 24110350
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:　　(214) 954-4135
Facsimile:　　(214) 953-1332
Email:　　　　jbrookner@grayreed.com
　　　　　　　eshanks@grayreed.com

-and-

**GOODWIN PROCTER LLP**
Kizzy L. Jarashow (*pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone:　　(212) 813-8800
Email:　　　　kjarashow@goodwinlaw.com

-and-

David R. Chen (*pro hac vice*)
520 Broadway Suite #500
Santa Monica, CA 90401
Telephone:　　(424) 252-6400
Email:　　　　davidchen@goodwinlaw.com

***Counsel to EIT Pharma, Inc., formerly
known as Eiger InnoTherapeutics, Inc.***

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:    /s/ Joshua D. Morse (with permission)
　　　L. James Dickinson
　　　Texas Bar No. 24105805
　　　Reed C. Trechter
　　　Texas Bar No. 24195454
609 Main Street, Suite 2000
Houston, TX 77002
Telephone:　　(713) 276-7600
Email:　　　　james.dickinson@pillsburylaw.com
　　　　　　　reed.trechter@pillsburylaw.com

-and-

Joshua D. Morse
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:　　(415) 983-1202
Email:　　　　Joshua.morse@pillsburylaw.com

*Counsel for Sentynl Therapeutics, Inc.*

## **Exhibit A**

**Hearing Transcript re Interim Settlement Agreement**

```
1                 IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF TEXAS
2                            DALLAS DIVISION

3                               )    Case No. 24-80040-sgj11
     In Re:                     )    Chapter 11
                                )
4    EIGER BIOPHARMACEUTICALS,   )    Dallas, Texas
     INC.,                       )    April 29, 2025
5                                )    10:00 a.m. Docket
              Debtor.            )
6                                )    MOTIONS
                                )
7    _____)

                      TRANSCRIPT OF PROCEEDINGS
8           BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
                 UNITED STATES BANKRUPTCY JUDGE.
9
     APPEARANCES:
10
     For Eiger                  Jason S. Brookner
11   InnoTherapeutics, Inc.:    Emily F. Shanks
                                GRAY REED & MCGRAW, LLP
12                              1601 Main Street, Suite 4600
                                Dallas, TX  75201
13                              (469) 320-6132

14   For Sentynl Therapeutics,  Hugh M. Ray, III
     Inc.:                      Lawrence James Dickinson
15                              PILLSBURY WINTHROP SHAW PITTMAN,
                                  LLP
16                              609 Main, Suite 2000
                                Houston, TX  77002
17                              (713) 276-7600

18   For Sentynl Therapeutics,  Joshua D. Morse
     Inc.:                      PILLSBURY WINTHROP SHAW PITTMAN,
19                                LLP
                                Four Embarcadero Center,
20                                22nd Floor
                                San Francisco, CA  94111-5998
21                              (415) 983-1202

22   For Sentynl Therapeutics,  Mark Stromberg
     Inc.:                      STROMBERG STOCK
23                              8350 N. Central Expressway,
                                  Suite 1225
24                              Dallas, TX  75206
                                (972) 458-5353

25
```

2

1    APPEARANCES, cont'd.:

2    For the Liquidating          Rachel A. Parisi
     Trustee::                    PORZIO, BROMBERG & NEWMAN, P.C.
3                                 100 Southgate Parkway
                                  Morristown, NJ  07962
4                                 (973) 889-4261

5    For the Liquidating          S. Margie Venus
     Trustee:                     MCKOOL SMITH
6                                 600 Travis Street, Suite 7000
                                  Houston, TX  77002
7                                 (713) 485-7315

8    Recorded by:                 Sara Ferrufino / Hawaii S. Jeng
                                  UNITED STATES BANKRUPTCY COURT
9                                 1100 Commerce Street, 12th Floor
                                  Dallas, TX  75242
10                                (214) 753-2088

11   Transcribed by:              Kathy Rehling
                                  311 Paradise Cove
12                                Shady Shores, TX  76208
                                  (972) 786-3063
13

14

15

16

17

18

19

20

21

22

23

24

25        Proceedings recorded by electronic sound recording;
            transcript produced by transcription service.

1          DALLAS, TEXAS - APRIL 29, 2025 - 10:07 A.M.

2          (Under seal proceedings conducted from 10:07 to 11:52 a.m.

3     Open court proceedings begin at 11:59 a.m.)

4          THE COURT:  All right.  That was a little bit more

5     than five minutes.  Please be seated.  Sorry about that.

6     We're ready to hear it now.  I should say we're on the record

7     now in Eiger BioPharmaceuticals, Case No. 24-80040.  We're

8     convening a hearing at this point on Sentynl's expedited

9     motion for interim equitable relief.  The lawyers have

10    announced a resolution of that, and I am about to hear on the

11    record what that resolution is.

12          MS. SHANKS:  Thank you, Your Honor.  Emily Shanks of

13    EIT Pharma, Inc.  Thank you for indulging us in reading this

14    into the record.  We are very pleased to announce that we have

15    an interim settlement agreement.  EIT has worked very hard to

16    get here, as well as Sentynl.

17       So, with that being said, bear with me, and I'm going to

18    read it word for word into the record, and then Mr. Morse here

19    is just going to --

20          MR. MORSE:  I'm just here for moral support.

21          MS. SHANKS:  -- just going to babysit me.

22          THE COURT:  Okay.  All right.

23          MS. SHANKS:  All right.

24       EIT and Sentynl will issue a joint letter to Corden in

25    order to authorize and direct Corden to release the following

1   materials, information, and data to Sentynl as follows.  For

2   the Compound W reference materials, drug substance reference

3   standards, Corden is permitted, authorized, and directed to

4   immediately or as promptly as possible release the following

5   materials to Sentynl or its designated recipient, its Japanese

6   distributor, and engage in direct communications with Sentynl

7   or its designated recipient in furtherance of providing such

8   materials.  As the sponsor under the Corden contracts, EIT

9   shall be included on all communications between Corden and

10  Sentynl related to such materials shared under this proposal.

11      Sentynl must clearly indicate to EIT whether Option A1,

12  which I will talk about below, or Option A2 will be selected

13  for, one, the reference standards, and two, lonafarnib drug

14  substance standards, respectively.  And if Sentynl selects

15  Option 1A(i) and 2A(ii) for both, if the retest fails or the

16  required timing, that is, the materials are not received and

17  retested prior to their current expiration, if either of these

18  are not met, the parties will need to -- or Sentynl will need

19  to use Option 1A(ii) and 2A(ii).

20      This is tedious.

21      The reference standards are the Compound W options, either

22  1 or 2.  1 is the retest current Compound W, issue new

23  Certificate of Analysis, or COA, for CPC-IHRS-0164 and provide

24  25 milligrams to AnGes, produce and test new Compound W STD

25  lot, issue COA, and provide 100 milligrams to AnGes is the

1   second option there.

2       And then the following lonafarnib drug substance or the DS

3   standard options are either 1 or 2.  1 is retest current

4   lonafarnib STD, issue new COA for CPC-IHRS-0012 and provide

5   350 milligrams to AnGes, and the second option is produce and

6   test new lonafarnib STD, issue COA, and provide 350 milligrams

7   to AnGes.

8       Sentynl will be responsible for any direct and indirect

9   costs associated with the release of such materials, including

10  costs of retesting and qualifications of the reference

11  standards, issuance of the COA, generation of aliquots and

12  shipment costs for work performed for Sentynl under the

13  current Corden contracts.

14      If Sentynl's direct payment to Corden is not possible for

15  any reason, Sentynl will make payment to EIT per Corden-issued

16  invoice, with payment made prior to the release of the

17  material and information.

18      Next, for the information and data, EIT will provide

19  Sentynl the following quality documents, batch records, and

20  stability data.  EIT will provide at no cost to Sentynl

21  information and data generated prior to November 3rd, 2024,

22  which was the date on which the Corden contracts were assigned

23  to EIT.  For stability data generated after November 3rd,

24  2024, EIT is the sponsor of such data, providing technical

25  oversight.

1        The quality documents.  For the quality documents, Corden

2   is permitted, authorized, and directed to immediately or as

3   promptly as possible release the following quality documents

4   to Sentynl at no cost to Sentynl, or its designated recipient,

5   the Japanese distributor, and engage in direct communications

6   with Sentynl or its designated recipient in furtherance of

7   providing such quality documents, provided, however, that EIT

8   shall be included on all communications between Corden and

9   Sentynl relating to such documents, which are the following:

10  the 00 or the OOS-605 quality document, the DEV-4889 quality

11  document, and the DEV-4906 quality document.

12       For the batch records, EIT will instruct Corden to share

13  these documents to Sentynl and no cost to Sentynl directly,

14  provided, however, that EIT shall be included on all

15  communications between Corden and Sentynl related to such

16  records.  And those batch records are B0 -- BO2007B034,

17  BO2210B0 --

18           MR. MORSE:  You read that one incorrectly.

19           MS. SHANKS:  Let me start over for the second one.

20  It's BO2210B024.

21       EIT will permit Corden to provide the following stability

22  data per the terms outlined below.  As the sponsor who is

23  running the studies with Corden after November 3rd, 2024, EIT

24  does not lose its ability and rights to provide technical

25  oversight for the following stability data reports and EIT

1  will review and approve the final study reports related to

2  these studies.

3     Sentynl will have the ability to engage directly with

4  Corden with respect to any questions related to these studies,

5  provided that EIT is copied on, or, if verbal, is given an

6  opportunity to participate in all such communications.  These

7  studies cover batches as part of the manufacturing of

8  lonafarnib for both HDV and Zokinvy, and are critical for

9  regulatory and commercial activities for both EIT and Sentynl,

10 respectively.

11    Once the studies are reviewed and finalized by EIT, which

12 shall be done as promptly as possible, and in no event later

13 than two weeks after Corden provides the draft study to EIT,

14 and once Sentynl has made the payment specified below into

15 escrow, EIT will immediately directly Corden to send the

16 stability data report directly to Sentynl, provided that EIT

17 is copied on all such communications.

18    And the following stability data reports are going to be

19 provided:  BO1906P807, the stability final report.  EIT will

20 provide this at no cost to Sentynl.

21    The next one is BO2011B901, stability 36M and 48M final

22 reports.  EIT will provide the stability 36M report at no cost

23 to Sentynl.  The 48M final report is generated after the

24 November 3rd, 2024 transfer date and is therefore sponsored by

25 EIT.  EIT is not currently in possession of this report.  EIT

1  will promptly request the 48M final report, and upon EIT's

2  receipt of the report and Sentynl's payment of $20,000 into

3  escrow, described further below, EIT will immediately instruct

4  Corden to provide the report to Sentynl.

5      The next report is BO2210B22B, stability 24M report.  The

6  24M report is generated after the November 3rd, 2024 transfer

7  date and is therefore sponsored by EIT.  EIT is not currently

8  in possession of this report.  EIT will promptly request the

9  24M report, and upon receipt of the report and Sentynl's

10 payment of $20,000 into the escrow described below, EIT will

11 immediately instruct Corden to provide the report to Sentynl.

12     The next report is B022 -- BO2210B023, the stability 18M

13 report.  The 18M report is generated after the November 3rd,

14 2024 transfer date and is therefore sponsored by EIT.  EIT is

15 not currently in possession of this report.  EIT will promptly

16 request the 18M report, and upon receipt of the report and

17 Sentynl's payment of $20,000 into the escrow described below,

18 EIT will immediately instruct Corden to provide the report to

19 Sentynl.

20     And the last stability reports are the BO2210B024

21 stability 12M and 18M reports.  EIT will provide the stability

22 12M report at no cost to Sentynl.  The 18M report is generated

23 after the November 3rd, 2024 transfer date and is therefore

24 sponsored by EIT.  EIT is not currently in possession of this

25 report.  EIT will promptly request the 18M final report, and

1  upon receipt of the report and Sentynl's payment of $20,000

2  into the escrow described below, EIT will immediately instruct

3  Corden to provide the report to Sentynl.

4      Sentynl agrees to wire a total of $100,000 to Gray Reed's

5  trust account, allocated as follows:  $20,000 escrowed with

6  respect to the above-referenced standards and DS standards in

7  the amount of $10,000 for the reference standards and $10,000

8  for the DS standards; and $80,000 escrowed with respect to the

9  stability data, based on $20,000 per stability study report,

10 as specified above.

11     If the Court determines that Sentynl owns and/or otherwise

12 has rights to access or use any or all of the reference

13 standards, data, and/or information set forth above under the

14 Zokinvy APA and related documents, the $100,000 or any

15 applicable portion based on the fair value of the applicable

16 item will be returned to Sentynl.

17     If the Court determines that Sentynl does not own and/or

18 otherwise has no rights to access or use any or all of the

19 reference standards data and/or information under the Zokinvy

20 APA and related documents, the $100,000 or any applicable

21 portion based on the fair value of the applicable item will be

22 disbursed to EIT as compensation for Sentynl's use of the

23 materials.

24     Notwithstanding the amount of money paid into the escrow

25 or otherwise allocated with respect to specific materials and

1    reports under this agreement, each party reserves all rights

2    to dispute, contest, present evidence, et cetera, about cost,

3    value, worth, et cetera, of the materials, information, and

4    data on a go-forward basis.  The sum of money identified in

5    this agreement is not a benchmark or standard or liquidated

6    damages amount for valuing the materials, information, and

7    data.

8         Notwithstanding anything in this agreement to the

9    contrary, each party reserves all rights relating to the

10   actual or claimed ownership and/or rights to use or access the

11   materials, information, and data that are the subject matter

12   of this agreement.

13        And for clarity, despite any language to the contrary,

14   Sentynl reserves all rights related to Sentynl's claims that

15   Sentynl either owns or has rights to all of the materials,

16   information, and data referenced herein, and other materials,

17   information, and data as set forth in Sentynl's various

18   motions to date.

19        Sentynl will withdraw its expedited motion for interim

20   equitable relief after receipt of the jointly-signed

21   instruction letter to Corden contemplated by this agreement,

22   so long as that instruction letter is signed prior to a ruling

23   on Sentynl's expedited motions.  So that's taken care of.

24        The parties reserve all rights.

25        And then this agreement was further modified by the April

1    28th email, which states that EIT will agree to move forward

2    with the interim settlement agreement pending receipt of the

3    inventories from Lonza and Corden as follows:  EIT will

4    immediately provide Sentynl with access to the items set forth

5    above and the parties' latest proposal, which was just stated

6    on the record, provided that in exchange Sentynl agrees that

7    immediately upon confirmation from Lonza that Lonza currently

8    holds at least 43.1 kilograms of Batch BO2210B024, Sentynl

9    will provide Corden with authorization for the release of the

10   remaining amount of Batch BO2210B024 to EIT.  If Lonza holds

11   less than 43.1 kilograms, then Sentynl need not provide Corden

12   with any instruction to release any portion of Batch

13   BO2210B024 to EIT.

14       And this was further modified by the April 29th email.

15   The interim settlement is subject to the following terms:

16   Sentynl will agree to release the previously-proposed 19.6

17   kilograms, or any lesser amount, if less, but given the lack

18   of information about this batch, Sentynl does not agree to

19   approve release of any portion of Batch BO2210B024 to EIT.

20       The 19.6 kilograms will not be authorized for release

21   until Sentynl gets written confirmation from Corden confirming

22   that the 19.6 kilograms is not compromised of any sample

23   materials, Stage 3 seeds, reference standards, or stability

24   materials.  The parties agree that sample material means a

25   retained sample from a batch for any of the foregoing

1  purposes, specifically Stage 3 seeds, reference standards or

2  stability materials.

3      Sentynl is not waiving any right to bring future claims

4  related to EIT's use of this 19.6 kilograms, just as EIT is

5  not waiving any rights to claim damages for the reference

6  materials being released to Sentynl.

7      The foregoing is based on the requirement that at least

8  42.5 kilograms, noting that a small amount of the previous

9  43.1 kilograms has already been used, of the applicable batch

10  is confirmed by Lonza.

11      If Corden requires the parties to release Corden from any

12  liability or otherwise provide Corden with similar contractual

13  comfort -- that is, indemnification, for example -- in order

14  for Corden to act on the Corden instruction letter, each party

15  will immediately provide Corden with all such requested

16  contractual comfort.

17      That is it for the agreed interim agreement, but we did

18  want to also read into the --

19          MR. MORSE:  Just, yeah, before you go there, I just

20  want to clarify --

21          THE COURT:  Okay.  Your colleague, Mr. Brookner, is

22  standing up for the EIT side of this.  Do you have something

23  else to add before --

24          MR. BROOKNER:  I do, Your Honor.  I just want to make

25  sure we didn't misstate something.

1          THE COURT:  Okay.  Make sure you speak into --

2          MR. BROOKNER:  I'm sorry to interrupt.

3      (Off the record.)

4          MS. SHANKS:  Yeah.  For purposes of clarity for the

5  record, the batch that Sentynl needs confirmation of that is

6  at Lonza is in the amount of 42.5 kilograms, rather than the

7  43.1.

8          THE COURT:  Okay.

9          MR. MORSE:  That's fine.  And then one other

10  clarification, Your Honor.

11      (Off the record.)

12          MR. MORSE:  There were, I think, two references to

13  you may have heard the Japanese distributor.

14          THE COURT:  Uh-huh.

15          MR. MORSE:  That was in the actual language, that was

16  an example.  And just for the record, any references to the

17  Japanese distributor are examples, not an exclusive, you know,

18  end point for where the information may be shared with --

19          THE COURT:  Okay.

20          MR. MORSE:  -- or to whom the information may be

21  shared with.  That's all clear in the actual words of the

22  document.

23          THE COURT:  Okay.

24          MR. MORSE:  But I just want to make sure for the

25  purposes of the record that that's not exclusively available

1    just for us to share only with the Japanese distributor.

2         THE COURT:  Okay.  Got it.  And with that one

3    clarification, --

4         MR. MORSE:  And then --

5         THE COURT:  -- does Sentynl agree with everything

6    that was just read into the record?

7         MR. MORSE:  The only thing about the clarification,

8    on the 42.5, I think it's approximately 42.5.

9         MS. SHANKS:  That's right.

10         MR. MORSE:  And I think that's -- as long as we all

11    agree.

12         THE COURT:  Okay.

13         MR. MORSE:  We're dealing with, you know, volumes

14    that neither party actually has control over.  And so we're

15    dealing in information that we believe to be approximate and

16    we're using our good faith and best estimates.

17         THE COURT:  Okay.

18         MR. MORSE:  So I just want to make sure that that is

19    clear on the record.

20         THE COURT:  All right.  Well, thank you.

21         MS. SHANKS:  I have one more thing, additionally.

22         THE COURT:  Okay.

23         MS. SHANKS:  The parties just wanted to also agree to

24    the language that's going to be in our agreed order before the

25    Court, assuming that the Court also agrees.  So we would

1  propose the following language:  The interim agreement as

2  stated on the record at the hearing on April 29th, 2024, is

3  hereby approved in all respects.

4  THE COURT:  2025.

5  MS. SHANKS:  2025.  Thank you.

6  THE COURT:  Okay.

7  MS. SHANKS:  And then we would --

8  THE COURT:  Continue.  I thought I cut you off.  Did

9  I cut you off?

10  MS. SHANKS:  No, that's fine.

11  THE COURT:  Okay.

12  MS. SHANKS:  Thank you for that correction.

13  And then we would propose that we attach the unsealed

14  portion of the transcript so we could provide that to the

15  applicable parties.  And then if the transcript is not

16  immediately available, we would provide the respective email

17  agreements.

18  And we also would like the agreed order to say that:  All

19  parties are authorized and directed to abide by and comply

20  with the terms of this order.  And then we would just include

21  a standard retention of jurisdiction.

22  THE COURT:  Okay.  Is Sentynl okay with all of that?

23  MR. MORSE:  Yes, Your Honor.

24  THE COURT:  Okay.

25  MR. MORSE:  Thank you so much for your indulgence.

1   It was very important for us to get that all on the record.

2                THE COURT:  Okay.

3                MR. MORSE:  We appreciate it.

4                THE COURT:  Okay.  Very good.  And I appreciate it.

5                MS. SHANKS:  Thank you.

6                THE COURT:  To say tedious is an understatement, but

7   you all handled tedious very well.

8                MR. MORSE:  There was a reason.  There was a reason

9   for it.

10               THE COURT:  Okay.  Anything else?

11               MR. BROOKNER:  Your Honor, if I may, I just want to

12  make one quick closing comment after having listened to your

13  soliloquy earlier, because the Trustee's MSJ wasn't really our

14  place to stand up and throw ourselves into the mix.  But now

15  that we've got the settlement, I did want -- Ms. Shanks has

16  worked tirelessly, as have our clients, and so we've all

17  worked very hard to get to this point, and we agree with Your

18  Honor that this case does call out for a business solution.

19  And we've tried in the past, going back to last September.

20  We've been unsuccessful.  But we are optimistic and hopeful

21  that the parties can find a way to consensus to bring both

22  drugs to market as soon as possible to benefit both sets of

23  patients and constituents.

24               THE COURT:  Okay.  Thank you for saying that.  I

25  appreciate hearing that.

1      All right.  Well, so, for now, we are finished with our

2  business in Eiger, I thought, but maybe not.

3           MR. MORSE:  Your Honor, Joshua Morse for the record.

4  Just to echo the sentiment that we have all, you know, Sentynl

5  and EIT, has been working tirelessly, as you saw, you know,

6  during this morning's hearing, to get even this interim

7  agreement.

8      It also sparked some additional conversations between the

9  parties about a global settlement that we have been trying to

10  work out that was an extension of those initial settlement

11  discussions that began a long time ago.  And as I had

12  mentioned to counsel, we are absolutely open to continuing

13  that dialogue in the hopes of resolving this in a consensual

14  manner.

15           THE COURT:  Okay.  And I appreciate hearing that as

16  well.

17      Okay.  Well, Hawaii is a person to talk to about getting

18  an expedited transcript.  Hawaii has many jobs these days.  So

19  she'll refer you to anyone she needs to refer you to.  But

20  obviously we'll facilitate that to help you out.

21           MR. MORSE:  Your Honor, if I may?

22           THE CLERK:  It's already assigned.  It's taken care

23  of.

24           THE COURT:  It's already assigned?  Okay.  Well, talk

25  to her.  She'll let you know who's in charge of that.

1              MR. MORSE:  I was just going to let Your Honor know

2    that I would prepare a sort of vanilla order that says, for

3    the reasons stated in the record relative to the motion, run

4    it by Ms. Parisi and get it to Your Honor --

5              THE COURT:  Okay.

6              MR. MORSE:  -- within the next day or two.

7              THE COURT:  Okay.  Terrific.

8              MR. MORSE:  Thank you.

9              THE COURT:  And I'm expecting, likewise, the sealing

10   order that we talked about at the beginning of today.

11             MR. RAY:  Yes, Your Honor.

12             THE COURT:  Okay.  Thank you.  We're adjourned.

13             MS. PARISI:  Thank you, Your Honor.

14             THE CLERK:  All rise.

15        (Proceedings concluded at 12:21 p.m.)

16                             --oOo--

17

18

19

20                          CERTIFICATE

21        I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
22   above-entitled matter.

23    **/s/ Kathy Rehling**                    **04/30/2025**

24   _____      _____
     Kathy Rehling, CETD-444                       Date
25   Certified Electronic Court Transcriber

19

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

                              INDEX
                      Open Court Proceedings
                      11:59 a.m. to 12:21 p.m.

PROCEEDINGS                                                    3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS

Motion for Interim Equitable Relief - *Agreement Reached*      3

END OF PROCEEDINGS                                            18

INDEX                                                        19

**<u>Exhibit B</u>**

**Agreed Script**

**[April 23 email]:**

EIT and Sentynl will issue a joint letter to Corden in order to authorize and direct Corden to release the following materials, information, and data to Sentynl, as follows:

**Compound W reference Standards / Drug Substance reference Standards:**

Corden is permitted, authorized and directed to immediately (or as promptly as possible) release the following materials to Sentynl or its designated recipient (e.g., its Japanese distributor) and engage in direct communications with Sentynl or its designated recipient in furtherance of providing such materials. As the sponsor under the Corden contacts, EIT shall be included on all communications between Corden and Sentynl related to such materials shared under this proposal.

Sentynl must clearly indicate to EIT whether Option a(i) or Option a(ii) will be selected for: (1) Reference Standards, and (2) Lonafarnib Drug Substance Standards, respectively. [Note: Sentynl selects option 1(a)(i) and 2(a)(i), but for both, if the retest fails or the required timing (i.e., the materials are not received and retested prior to their current expiry) is not met, we will need to use option 1(a)(ii) and 2(a)(ii).]

1. **Reference Standards:**
   1. Compound W options (<u>either</u> (i) or (ii)):
      i. Retest current Compound W, issue new Certificate of Analysis ("CoA") for CPC-IHRS-0164, and provide 25mg to Anges (75mg sent prev.);
      ii.. Produce and test new Compound W std lot, issue CoA, and provide 100mg to Anges
2. **The following Lonafarnib drug substance (DS") standard:**
   1. DS options (<u>either</u> (i) or (ii)):
      i. Retest current Lonafarnib std, issue new CoA for CPC-IHRS-0012, and provide 350mg to Anges;
      ii. Produce and test new Lonafarnib std, issue CoA, and provide 350mg to Anges

Sentynl will be responsible for any direct and indirect costs associated with the release of such materials, including costs of retesting and qualifications of the Reference Standards, issuance of the COA, generation of aliquots, and shipment costs, for work performed for Sentynl under the current Corden contracts. If Sentynl's direct payment to Corden is not possible for any reason, Sentynl will make payment to EIT per Corden issued invoice, with payment made prior to the release of the material and information.

**Information and Data:** EIT will provide Sentynl the following Quality Documents, Batch Records, and Stability Data. EIT will provide at no cost to Sentynl, information and data generated prior to November 3, 2024, which was the date on which the Corden contracts were assigned to EIT. For stability data generated after November 3, 2024, EIT is the sponsor of such data providing technical oversight.

**Quality Documents:**

Corden is permitted, authorized, and directed to immediately (or as promptly as possible) release the following Quality Documents to Sentynl (at no cost to Sentynl) or its designated recipient (e.g., its Japanese distributor) and engage in direct communications with Sentynl or its designated recipient in furtherance of providing such Quality Documents; provided however, that EIT shall be included on all communications between Corden and Sentynl related to such documents:

1. OOS-605

2. DEV-4889

3. DEV-4906

**Batch Records:**

EIT will instruct Corden to share these documents to Sentynl (at no cost to Sentynl) directly; provided however, that EIT shall be included on all communications between Corden and Sentynl related to such records:
1. BO2007B034
2. BO2210B024

**EIT will permit Corden to provide the following Stability Data per terms outlined below :**

As the sponsor who is running the studies with Corden after November 3, 2024, EIT does not lose its ability and rights to provide technical oversight for the following Stability Data Reports and EIT will review and approve the final study reports related to these studies. Sentynl will have the ability to engage directly with Corden with respect to any questions related to these studies, provided that EIT is copied on, or, if verbal, is given an opportunity to participate in, all such communications. These studies cover batches as part of the manufacturing of Lonafarnib for both HDV and Zokinvy and are critical for regulatory and commercial activities for both EIT and Sentynl, respectively. Once the studies are reviewed and finalized by EIT (which shall be done as promptly as possible, and in no event later than two (2) weeks after Corden provides the draft study to EIT) and once Sentynl has made the payments specified below into the escrow, EIT will immediately direct Corden to send the Stability Data Report directly to Sentynl, provided that EIT is copied on all such communications.
1. BO1906P807 – Stability Final Report
   1. EIT will provide this at no cost to Sentynl.
2. BO2011B901 – Stability 36M, 48M (Final Report)
   1. EIT will provide the Stability 36M report at no cost to Sentynl.
   2. The 48M (Final Report) is generated after the Nov. 3, 2024 transfer date and is therefore sponsored by EIT. EIT is not currently in possession of this report. EIT will promptly request the 48M (Final Report), and upon EIT's receipt of the report and Sentynl's payment $20,000 into the escrow described below, EIT will immediately instruct Cordon to provide the report to Sentynl.
3. BO2210B22B – Stability 24M Report

2

4923-9992-0700.1

      1. The 24M report is generated after the Nov. 3, 2024 transfer date and is therefore sponsored by EIT. EIT is not currently in possession of this report. EIT will promptly request the 24M report, and upon receipt of the report and Sentynl's payment $20,000 into the escrow described below, EIT will immediately instruct Cordon to provide the report to Sentynl.

4. BO2210B023 – Stability 18M Report

      1. The 18M report is generated after the Nov. 3, 2024 transfer date and is therefore sponsored by EIT. EIT is not currently in possession of this report. EIT will promptly request the 18M report, and upon receipt of the report and Sentynl's payment $20,000 into the escrow described below, EIT will immediately instruct Cordon to provide the report to Sentynl.

5. BO2210B024 – Stability 12M, 18M Report

      1. EIT will provide the Stability 12M report at no cost to Sentynl.

      2. The 18M is generated after the Nov. 3, 2024 transfer date and is therefore sponsored by EIT. EIT is not currently in possession of this report. EIT will promptly request the 18M (Final Report), and upon receipt of the report and Sentynl's payment $20,000 into the escrow described below, EIT will immediately instruct Cordon to provide the report to Sentynl.

Sentynl agrees to wire a total of $100,000 to Gray Reed's trust account, allocated as follows: (i) $20,000 escrowed with respect to the above Reference Standards and DS Standards in the amount of $10,000 for the Reference Standards and $10,000 for the DS Standards; and (ii) $80,000 escrowed with respect to the Stability Data based on $20,000 per Stability Study Report as specified above.

If the Court determines that Sentynl owns and/or otherwise has rights to access or use any or all of the reference standards, data and/or information set forth above under the Zokinvy APA and related documents, the $100,000 (or any applicable portion based on the fair value of the applicable item) will be returned to Sentynl. If the Court determines that Sentynl does not own and/or otherwise has no rights to access or use any or all of the reference standards, data and/or information under the Zokinvy APA and related documents, the $100,000 (or any applicable portion based on the fair value of the applicable item) will be disbursed to EIT as compensation for Sentynl's use of the materials.

Notwithstanding the amount of money paid into the escrow or otherwise allocated with respect to specific materials and reports under this agreement, each party reserves all rights to dispute, contest, present evidence, etc. about the cost, value, worth, etc. of the materials, information, and data on a go-forward basis – the sum of money identified in this agreement is not a benchmark or standard or liquidated damages amount for valuing the materials, information, and data. Notwithstanding anything in this agreement to the contrary, each party reserves all rights relating to the actual or claimed ownership and/or rights to use or access the materials, information and data that are the subject matter of this agreement (and, for clarity, despite any language to the contrary, Sentynl reserves all rights related to Sentynl's claims that Sentynl either owns or has rights to all of the materials, information and data referenced herein and other materials, information and data as set forth in Sentynl's various motions to date).

4923-9992-0700.1

Sentynl will withdraw its Expedited Motion for Interim Equitable Relief after receipt of the jointly signed instruction letter to Corden contemplated by this agreement so long as that instruction letter is signed prior to a ruling on Sentynl's Expedited Motion for Interim Equitable Relief.

The parties reserve all rights.

**[April 28 email]:** EIT will agree to move forward with the interim settlement agreement pending receipt of the inventories from Lonza and Corden as follows:

*EIT will immediately provide Sentynl with access to the items set forth in the parties' latest proposal just stated on the record; ***provided that in exchange***, Sentynl agrees that immediately upon confirmation from Lonza that Lonza currently holds at least 43.1 Kg of batch BO2210B024, Sentynl will provide Corden with authorization for the release of the remaining amount of batch BO2210B024 to EIT.

*If Lonza holds less than 43.1Kg, then Sentynl need not provide Corden with any instruction to release any portion of batch BO2210B024 to EIT.

**[April 29 email]:**

This interim settlement is subject to the following terms.

1. Sentynl will agree to release the previously proposed 19.6KG (or any lesser amount if less), but given the lack of information about this batch, Sentynl does not agree to approve release of "any portion of batch BO2210B024 to EIT."
2. The 19.6KG will not be authorized for release until Sentynl gets written confirmation from Corden confirming that the 19.6KG is not comprised of any sample material, Stage 3 seeds, reference standards or stability materials. The parties agree that 'sample material' means a retained sample from a batch for any of the foregoing purposes (i.e., stage 3 seeds, reference standards, or stability materials).
3. Sentynl is not waiving any rights to bring future claims related to EIT's use of this 19.6KG (just as EIT is not waiving any rights to claim damages for the reference materials being released to Sentynl).
4. The foregoing is based on the requirement that at least 42.5KG (noting that a small amount of the previous 43.1KG has already been used) of the applicable batch is confirmed by Lonza.
5. If Corden requires the Parties to release Corden from any liability or otherwise provide Corden with similar contractual comfort (e.g., indemnification) in order for Corden to act on the Corden Instruction Letter, each Party will immediately provide Corden with all such requested contractual comfort.

4923-9992-0700.1